06-3691-cv
PRL USA Holdings, Inc. v. United States Polo Ass'n

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2007

(Argued: November 15, 2007                    Decided: March 4, 2008)

Docket No.  06-3691-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PRL USA Holdings, Inc.,

*Plaintiff-Appellant*,

v.

United States Polo Association, Inc., United States Polo
Association Properties, Inc., L.V. Enterprises, Inc.,
United States Polo Association, Ltd., Jordache, Ltd.,

*Defendants-Appellees*,

M&A Marketing Corp/American Jeans, Meir Panigel

*Defendants*,

Reliance Insurance Company,

*Movant*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Before: LEVAL, SOTOMAYOR, and B. D. PARKER, *Circuit Judges*.

Plaintiff PRL USA Holdings, Inc., holder of the Ralph Lauren trademarks, appeals from the judgment of the United States District Court for the Southern District of New York (Daniels, *J.*), entered following a jury trial, denying plaintiff's claims of trademark infringement. The jury found that three of the defendants' four contested marks did not infringe the plaintiff's polo player trademark. Plaintiff contends that the district court erred in admitting evidence of discussions at settlement negotiations, excluding a document prepared by an agent of a defendant which arguably reflected intent to use trademarks similar to the Ralph Lauren trademarks to compete unfairly, and in refusing to give a requested jury instruction. Affirmed.

GEORGE A. STAMBOULIDIS, Baker & Hostetler, LLP, New York, NY (Gerald J. Ferguson, on the brief), for *Appellees* United States Polo Association, Inc., and United States Polo Association Properties, Inc.

MICHAEL S. SOMMER, McDermott Will & Emery LLP, New York, NY (Elliot Silverman, Ann E. Schofield, on the brief), for *Appellees* Jordache, Ltd., United States Polo Association, Ltd., L.V. Enterprises, Inc.

LESLIE GORDON FAGEN, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY (Andrew G. Gordon, Darren W. Johnson, on the brief), for *Appellant*.

LEVAL, *Circuit Judge*:

This is an appeal by plaintiff PRL USA Holdings, Inc., holder of the Ralph Lauren trademarks for clothing, from the judgment of the United States District Court for the Southern District of New York (Daniels, *J.*), denying plaintiff's claims of trademark infringement. PRL has

for many years used as a mark on Ralph Lauren clothing a famous logo showing in silhouette a mounted polo player with polo mallet raised. PRL brought this action against the United States Polo Association ("USPA") and its licensee, Jordache, Ltd., alleging that four logos used by the defendants on a clothing line, each showing a pair of mounted polo players – the so-called "double horsemen marks" – infringed the Ralph Lauren polo player logo.

The four disputed marks include: (1) a solid silhouette of the two horsemen, (2) the same solid silhouette with the letters "USPA" added underneath, (3) an outline of the two horsemen, and (4) the same outline with "USPA" added underneath.

After trial, the jury found that the first logo – the solid double horsemen silhouette without lettering – infringed the plaintiff's trademarks. However, as for the three other marks, the jury found no likelihood of confusion and hence no infringement. The district court entered judgment accordingly.

PRL appeals from the part of the judgment in favor of the defendants on three grounds. First, PRL argues that the district court erred when it allowed the defendants to present evidence of discussions at settlement negotiations between PRL and the USPA. Second, PRL argues that the district court erred by failing to give the jury an instruction that the defendants, as past infringers, were required to maintain a "safe distance" from PRL's mark. Third, PRL contends that the district court erred when it excluded a document (the so-called "Ralph Rip-Off" document), which arguably demonstrated intent to compete unfairly by using a confusing trademark. We reject PRL's contentions and affirm the judgment.

3

## Background

Plaintiff PRL designs, markets, and distributes apparel, home furnishings, fragrances, and accessories under the name Ralph Lauren. It frequently employs as a trademark the polo player symbol, which has appeared on Ralph Lauren clothing since 1972.

Defendant USPA, founded in 1890, is the governing body of the sport of polo in the United States. The USPA promulgates the rules of the sport, sponsors tournaments, and assigns handicaps. Through its wholly-owned subsidiary, United States Polo Association Properties, Inc., the USPA registers trademarks and licenses them to be used for the sale of products. Since 1998, United States Polo Association Properties, Inc., has licensed the right to produce clothing bearing the USPA's trademarks to Jordache, a manufacturer of clothing.

PRL and the USPA have been in conflict since the 1980s, when the USPA first entered the retail clothing business. As the USPA admits, in the early 1980s it acted irresponsibly in licensing its logos. As a result, in 1984 PRL obtained a judgment in the United States District Court for the Southern District of New York (Sand, *J.*) enjoining the USPA from the use of certain marks that infringed PRL's trademarks. The judgment made clear, however, that the USPA remained free to "conduct[] a retail licensing program utilizing . . . a mounted polo player or equestrian or equine symbol which is distinctive from the [Ralph Lauren] polo player symbol . . . ."

The USPA presented evidence at trial supporting its argument that, while the USPA and PRL were engaged in settlement discussions regarding various contested marks in 1996, PRL assured the USPA that it would not object to the USPA's use of a version of the double horsemen mark. According to the USPA, this assurance prompted it to develop and license a version of the double

horsemen mark for use; Jordache subsequently spent over $41 million developing a clothing line bearing the mark. PRL's witness, its former general counsel, Lee Sporn, denied that PRL had consented to the USPA's use of a double horsemen mark.

In March 2000, PRL filed this suit against the USPA, Jordache, and related defendants for trademark infringement. In September 2003, after three years of pre-trial litigation, the parties settled a number of their disputes. The settlement agreement left unresolved whether the defendants' four double horsemen marks infringed PRL's trademarks. The parties stipulated in the settlement agreement that this claim would be resolved by a jury trial.

The jury trial began on October 3, 2005 and ended on October 20, 2005. At trial, PRL presented evidence that consumers were likely to confuse all four double horsemen marks with Ralph Lauren's polo player symbol. The defendants presented contrary evidence and also attempted to prove the affirmative defense of estoppel by acquiescence by presenting evidence that PRL had affirmatively consented to the USPA's use of a version of the double horsemen mark.

PRL objected to this latter evidence of consent on the ground that it consisted of statements made in compromise negotiations, offered to prove the invalidity of its claims, and therefore should be excluded under Federal Rule of Evidence 408. The district court overruled PRL's objection and admitted the evidence.

Using a special verdict form, the jury rendered the following special verdicts: the jury rejected the defendants' claim of estoppel by acquiescence. It found that the defendants' solid double horsemen mark infringed PRL's registered trademarks. On the other hand, the jury found that the defendants' three other double horsemen marks – the solid double horsemen with "USPA"

5

subscript, the outline double horsemen, and the outline double horsemen with "USPA" subscript – did not infringe PRL's trademarks. The district court entered judgment accordingly. This appeal followed.

Discussion

I. Evidence of Compromise Negotiations

The defendants offered the testimony of a former USPA employee, Merle Jenkins, and some corroborating evidence, that during the course of their settlement discussions, PRL gave the USPA consent to use a version of the double horsemen mark and implied that it was not "offensive" to PRL. PRL objected both before and during trial to all such evidence, citing Federal Rule of Evidence 408.

Under Rule 408, in its then-current version,[1] evidence of "conduct or statements made in compromise negotiations" is "not admissible to prove liability for or invalidity of [a] claim or its amount." The Rule, however, explicitly provided an exception. It "does not require exclusion when the evidence is offered for another purpose." Fed. R. Evid. 408 (2005).

The district court ruled that the evidence was admissible to prove the defendants' assertion that PRL was estopped to claim infringement after it led the defendants to believe no claim of infringement would be brought, and the defendants spent millions in developing the marks in reliance on that assurance. PRL contends the receipt of this evidence violated Rule 408.

_____

[1] The Rule was amended in ways not pertinent to this appeal effective December 1, 2006.

*a. PRL contends the defense of estoppel was a pretext for introducing evidence disputing likelihood of confusion.* PRL's first argument is that the defendants' reliance on Rule 408's exception, as authority allowing evidence from settlement negotiations to prove estoppel, was a mere pretext. PRL contends the defendants' true purpose in offering evidence that PRL expressed agreement to the USPA's use of a double horsemen logo was to suggest to the jury that if PRL did not object to the USPA's use of a double horsemen logo, it must have been because PRL did not believe the mark was confusingly similar to its own, and if PRL did not believe the two marks were confusingly similar, that must be because they in fact were not confusingly similar. Accordingly, PRL contends, the evidence was used for a purpose expressly prohibited by Rule 408, and not for "another purpose."

There is of course a likely logical overlap between the two issues. A trademark owner's assurance to one it later accuses of infringing that the owner will not object to the use of a certain mark may well suggest to a jury that the owner of the mark did not believe the mark in question was likely to cause confusion.

On the other hand, it is well established that if a trademark owner tells a potential defendant that it will not assert a claim of infringement based on the use of a particular mark, and the recipient of that assurance relies on the assurance to its substantial detriment, as by spending substantial sums in the development of the mark on which it received the assurance, estoppel will bar the trademark owner from subsequently claiming infringement. *See Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*, 294 F.3d 383, 395 (2d Cir. 2002) (describing the affirmative defense of acquiescence); 6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31:42

(4th ed. 2008). The USPA presented evidence that it had received such assurances from PRL with respect to a version of a double horsemen mark. The only way it could place its entitlement to estoppel in contention was by offering that evidence. While we recognize that in some instances a defendant could employ a claim of estoppel pretextually and abusively as a ploy to suggest impermissible inferences derived from settlement discussions, this was not such a case.[2]

*b. PRL contends that proving the defense of estoppel is barred by Rule 408 because it would establish the "invalidity of [PRL's] claim."* PRL's second contention with respect to the evidence of its conduct during the settlement negotiations is that Rule 408 by its literal terms prohibited its receipt, even when offered to prove an estoppel defense. The Rule provides that "conduct or statements made in compromise negotiations" are "not admissible to prove liability for or invalidity of [a] claim." Fed. R. Evid. 408 (2005). Without doubt, the evidence was of "conduct [and] statements made in compromise negotiations." In addition, it was, in a sense, offered to demonstrate

---

[2] In similar instances, the court and the parties might explore protecting against improper uses of evidence of settlement discussions by bifurcation. The trial might be broken into two stages. In the first stage the jury would hear the evidence, and render a partial verdict, on whether the defendant's accused mark is confusingly similar to the plaintiff's mark. If the jury finds it is not, the defendant wins; the question whether the plaintiff should be estopped becomes moot, and the evidence of such conduct never need be presented to the jury. If the jury determines that the defendant's mark is confusingly similar to the plaintiff's, the evidence on the issue of the plaintiff's estoppel can then be presented to the jury. If the trial is bifurcated in this fashion, the jury will not hear the evidence of the plaintiff's acquiescence while considering the question of confusing similarity of the marks. The evidence of the settlement discussions thus cannot influence the jury with respect to issues as to which that evidence is excluded by Rule 408. Had PRL feared that the evidence of acquiescence might improperly influence the jury on the issue of confusing similarity of the marks, it might have asked the court to consider such bifurcation.

the "invalidity" of PRL's claim of trademark infringement. If the defendants' claim of estoppel would succeed, PRL's claim of infringement would fail. It follows, according to PRL's argument, that the evidence was offered for the prohibited purpose of proving the "invalidity" of its claim, and was thus prohibited by Rule 408.

The problem with PRL's clever argument is that it would deprive Rule 408's exception of all meaning. The exception to the Rule asserts that the Rule "does not require exclusion [of settlement evidence] when the evidence is offered for another purpose" than those expressly prohibited. It goes on to offer as examples of permissible purposes "proving bias or prejudice of a witness, [and] negativing a contention of undue delay." The purpose of proving the bias or prejudice of one's adversary's witness would be to defeat the adversary's claims or contentions. Such evidence would be offered by a plaintiff to help establish its claim, by showing the unreliability of a defense witness, or by a defendant to show the invalidity of the plaintiff's claim, by showing the unreliability of a plaintiff's witness. Similarly, for a plaintiff to offer evidence of the defendant's conduct during settlement negotiations to "negativ[e] [the defendant's] contention of undue delay" on plaintiff's part, would ultimately seek to establish the plaintiff's claim by defeating the defendant's affirmative defense. If we accepted PRL's reading of the Rule, it would forbid use of the very examples given in the Rule as an exception to its prohibition. All of the evidence a party offers at trial is intended to help establish its own position and defeat the adversary's position. In a sense, all evidence offered seeks either to "prove liability for or invalidity of [a] claim or its amount." If we accepted PRL's contention of the meaning of the Rule, there would be no evidence falling within the category whose exclusion is "not require[d]" because it is "offered for another

9

purpose." The exception would be meaningless.

The exception clearly intends to exempt from the absolute prohibition of the Rule evidence focused on issues different from the elements of the primary claim in dispute. The second example offered, involving a contention of undue delay, is very like the present issue of estoppel by acquiescence. A defendant might seek to defeat a plaintiff's claim by contending that plaintiff forfeited the claim by undue delay in bringing it, to the defendant's detriment. That would be an affirmative defense. The defense, whether advancing it or "negativing" it, would involve issues different from the elements of the plaintiff's claim. Similarly, estoppel by acquiescence is an affirmative defense, which raises issues different from the elements of a claim of infringement. *See Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 293-94 (2d Cir. 1999) (affirming district court's decision to admit settlement evidence to prove an estoppel claim, and noting that the "basic elements of estoppel" do not "overlap with factors used to determine likelihood of confusion between trademarks").

While we have no need in this case to determine the full range of accommodation between Rule 408's prohibition and its exception, it seems clear that the firm prohibition should not apply to the affirmative defense of estoppel by acquiescence, which depended on issues distinct from the elements of the claim of infringement. To prevent a defendant from proving an estoppel by acquiescence that arose during settlement negotiations would unfairly curtail a defendant's ability to rely on that defense. A discussion between a trademark owner and a potential user of a similar mark in which the owner gives assurance that it will not sue for infringement may well be characterized as compromise negotiations. To construe Rule 408 as barring such evidence would

substantially limit the opportunity of defendants to rely on the defense of estoppel, even when well substantiated. *See Bankcard Am., Inc. v. Universal Bancard Sys., Inc.*, 203 F.3d 477, 484 (7th Cir. 2000) ("It would be an abuse of Rule 408 to allow one party during compromise negotiations to lead his opponent to believe that he will not enforce applicable time limitations and then object when the opponent attempts to prove the waiver of time limitations. Similarly, it would be an abuse of Rule 408 to let Bankcard lull Universal into breaching the contract and then prevent Universal from explaining its actions because the lulling took place around the settlement table.") (citing Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5312, at 273 n.5 (1980)).

PRL cites our decision in *Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506 (2d Cir. 1989), in support of its contention that the evidence was barred by Rule 408. In *Trebor*, the plaintiffs sued for breach of contract and offered settlement evidence for the purpose of disproving the defendant's statute of frauds defense. The district court excluded the evidence under Rule 408, and we affirmed. We noted that while the evidence might have been useful to satisfy the statute of frauds, it was also "the necessary first step to proving, ultimately, the validity of [the plaintiffs'] claims of breach of contract." *Id.* at 510. We wrote that, "[s]ince the two questions were so closely intertwined, admission of the documents even initially for the purpose of meeting the statute of frauds requirement would, under the circumstances of this case, militate against the public policy considerations which favor settlement negotiations and which underlie Rule 408." *Id.*

*Trebor* is quite different from this case. First, in *Trebor*, the purpose for which the settlement evidence was arguably permissible – proving compliance with the statute of frauds – shared significant overlap with the purpose for which the evidence was clearly excluded by Rule 408 –

11

proving the plaintiffs' breach of contract claim. Proving compliance with the statute of frauds by presenting a signed writing evidencing an agreement is also, in effect, proving the contract – a necessary element of the plaintiffs' breach of contract claim. That evidence lay close to the Rule's categorical prohibition of evidence proving liability. Here, by contrast, the elements of the USPA's claim of estoppel are distinct from the elements of PRL's claim of infringement.

Second, PRL misunderstands our ruling in *Trebor*. We did not rule that the exclusion of the evidence was mandated. We said only that the district court's decision to exclude it was not an abuse of discretion. *Id.* at 511. Although Rule 408 speaks categorically of the inadmissibility of settlement evidence to prove the validity or invalidity of a claim, the terms of the exception are less categorical. The exception says only that "[t]his rule . . . *does not require exclusion* when the evidence is offered for another purpose," Fed. R. Evid. 408 (2005) (emphasis added), leaving the court wide discretion whether to admit or exclude. Our conclusion in *Trebor* that the district court had discretion to exclude the evidence of compromise negotiations did not mean that the district court in *Trebor* was *required* to exclude that evidence, and in no way supports PRL's contention in this case that the district court was required by Rule 408 to exclude it.

*c. PRL contends it suffered "spillover" prejudice.* PRL's third contention is that, notwithstanding admissibility of the settlement evidence to prove estoppel, PRL suffered "spillover" prejudice resulting from the jury's impermissible use of the evidence to support the inference that PRL did not believe USPA's marks would be likely to cause confusion, and that they in fact were not likely to cause confusion.

12

We considered a similar claim in *Starter Corp. v. Converse, Inc.* Starter had sued for declaratory judgment to the effect that its use of its "Starter Star Marks" on shoes did not infringe Converse's mark. Converse asserted an equitable estoppel defense based on Starter's prior representations and agreement that it would not use its Star Marks on footwear. At trial, Starter sought to preclude Converse, under Rule 408, from referring to letters exchanged between the parties in connection with their settlement agreement. The district court held that the letters were admissible as evidence of Converse's estoppel defense. We upheld this ruling, finding that any likelihood of "spillover" prejudice was adequately addressed by the court's instructions to the jury. *Starter*, 170 F.3d at 290-94.

While *Starter* and this case are not precisely aligned, we hold that the district court did not abuse its discretion, and that any "spillover" prejudice to PRL from this evidence was insufficient to require retrial. In the first place, the agreement asserted by USPA, that PRL would allow USPA to use its mark, applied only to one of USPA's marks, and the jury found that mark to be infringing. The other USPA marks had not been in discussion at the time of PRL's alleged concession. Furthermore, the jury found against USPA on its equitable estoppel defense. In short, it appears that there was no prejudice to PRL from the receipt of this evidence.

PRL nonetheless asserts that the arguments of USPA's counsel were improper in that they implied that PRL believed that there was no likelihood of confusion. This argument is not frivolous. USPA's counsel made comments during opening and closing arguments to the effect that PRL

believed USPA's marks were distinct and non-infringing.[3] USPA, nonetheless, primarily used the settlement evidence for its estoppel defense, and not as proof of a purported belief on PRL's part that the marks were distinct. The comments during opening and closing were probably improper, but they were not of sufficient significance to warrant retrial.

PRL argues further that the district court erred by refusing to give a limiting instruction it requested on the use of settlement evidence. The language of the requested instruction would have required the jury to ignore any evidence that it concluded was made in the context of settlement negotiations, regardless of whether the settlement evidence was received for a purpose authorized by Rule 408. The requested instruction was thus contrary to the plain language of Rule 408, and the district court did not err in refusing to give it. *See Clark v. Pa. R.R. Co.*, 328 F.2d 591, 595 (2d Cir. 1964) ("[A] failure to grant a request for instructions that are in any respect incorrect and unsound does not constitute error."). PRL never requested an appropriate limiting instruction telling the jury for what purpose they could, and could not, consider the settlement evidence. We cannot tell whether PRL's failure to request an appropriate limiting instruction was strategic. Counsel often prefer not to propose a limiting instruction because the instruction may call the jury's attention to the harmful evidence. Nonetheless, whatever the reason for PRL's failure to request an appropriate limiting instruction, PRL cannot now complain of a lack of one.

---

[3] For example, USPA counsel stated during his opening that "as PRL told the USPA . . . these are distinct marks that are not confusing." In closing, he said, in reference to former PRL general counsel Lee Sporn, "[h]e thought these were distinct," and "he told us on the phone call it was distinct." Jordache counsel told the jury during his opening that "you will know from evidence that even Ralph Lauren didn't think they were confusing . . . evidence that Ralph Lauren knew the double horse did not infringe its rights."

14

## II. "Safe Distance" Jury Instruction

PRL's second argument is that the district court erred in refusing to instruct the jury that, as a previously adjudicated infringer, the USPA was required to keep a *safe distance* from PRL's mark. PRL requested that the judge instruct the jury as follows:

> In the December 6, 1984 Final Order, Judgment and Decree . . . this Court previously found that USPA were intentional infringers of Polo Ralph Lauren's registered Polo Player Symbol trademarks. Under the trademark law, a prior adjudicated infringer of another's trademarks must thereafter keep a safe distance and will be held to a higher standard of conduct with respect to the adoption of a new mark than would have been applied in the first instance. . . . [Y]ou should . . . determine for yourselves whether USPA has satisfied its obligation to keep a safe distance from Polo Ralph Lauren's registered Polo Player Symbol trademarks in adopting and using the double horsemen marks at issue in this case.

An obligation on the part of a previously adjudicated infringer to maintain a safe distance from infringing the plaintiff's marks has been found to serve a useful purpose in fashioning injunctions based on a finding of infringement, *see Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 220 (2d Cir. 2003); *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1179 (11th Cir. 2002); *Sunbeam Prods., Inc. v. West Bend Co.*, 123 F.3d 246, 260 (5th Cir. 1997), *abrogated on other grounds by TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23 (2001), especially where the infringement was abusive or in bad faith, *Tamko Roofing Prods., Inc. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23, 40 (1st Cir. 2002); 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:4 (4th ed. 2008). It has also been found useful in contempt proceedings, in determining whether an enjoined infringer has violated the injunction, thus relieving the reviewing court of the need to retry the entire range of issues that may be relevant in

15

an infringement action for each small variation the defendant makes to the enjoined mark. *See Wella Corp. v. Wella Graphics, Inc.*, 37 F.3d 46, 48 (2d Cir. 1994); *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1156 (7th Cir. 1994); *Oral-B Labs., Inc. v. Mi-Lor Corp.*, 810 F.2d 20, 24 (2d Cir. 1987), *abrogated on other grounds by Paddington Corp. v. Attiki Imps. & Distributors, Inc.*, 996 F.2d 577 (2d Cir. 1993); *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1432 (7th Cir. 1985); *Broderick & Bascom Rope Co. v. Manoff*, 41 F.2d 353, 354 (6th Cir. 1930); 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:21 (4th ed. 2008).

PRL, however, cites no authority establishing that such an instruction must be given in a civil infringement action alleging a new infringement by one previously adjudicated to have infringed the plaintiff's mark.[4] When one sues for infringement of a trademark, the standard that comes into play is whether the secondary mark is likely to cause confusion. Insertion of the concept of "safe distance" would change the standard of liability. If the "safe distance" instruction were used, the jury would be invited to find liability based on a mark which was not likely to cause confusion, leaving unclear to the jurors which standard should govern.

Furthermore, the requested instruction was particularly inappropriate in view of the terms of the previous injunction governing USPA's conduct. That injunction, issued in 1984, prohibiting

---

[4] PRL cites our summary order *Espinoza v. Allen Imps. & Trade Corp.*, 100 F.3d 942, No. 95-7531, 1996 WL 19142 (2d Cir. Jan. 17, 1996) (unpublished table decision), as an example of a case in which we approved the use of the safe distance concept in circumstances other than the framing of an injunction or adjudicating a contempt. However, our brief order in *Espinoza* does not make clear what role safe distance played in the district court's decision to enjoin use of a mark, or in our affirmance. Moreover, it appears from its sketchy description that the use of safe distance – both by the district court and by this court on appeal – was superfluous, because the district court had determined that the same mark that did not keep a "safe distance" also caused likelihood of confusion, and we affirmed that finding. *Id.* at *2.

USPA from infringing PRL's marks, expressly provided that USPA remained free to use "a mounted polo player or equestrian or equine symbol which is distinctive from the [Ralph Lauren] polo player symbol . . . ." To instruct the jury that USPA was required to "keep a safe distance" without further explanation of how this related to USPA's right, under the injunction, to use a mounted polo player, could have led the jury to find liability based on conduct which the earlier injunction had expressly permitted. We conclude that the instruction requested by PRL would, at the very least, have confused the jury. We find no error in the district court's refusal to give it.

### III.  Exclusion of the "Ralph Rip-Off" Document

Finally, PRL contends that the district court erred in refusing to admit a document it calls the "Ralph Rip-Off." The document was created by Michael Nowack, who worked in advertising and was occasionally retained by defendant Jordache. The document reads:

The Ralph Rip-off.
Everyone knows we're ripping off Ralph.  Including us.
It is the mission of our advertising to deny it
by appearing to be true to the sport.
After all, Ralph did rip-off the sport.

PRL contends the document was attributable to Jordache because it was made by Jordache's agent within the scope of the agency and was relevant because it disclosed a bad faith intent of Jordache to free-ride on PRL's marks. The district court excluded the document as inadmissible hearsay and under Federal Rule of Evidence 403, on the basis that its probative value was substantially outweighed by the likelihood of unfair prejudice to the defendants.

Rule 403 allows the exclusion of relevant evidence "if its probative value is substantially

outweighed by the danger of unfair prejudice," as well as for other reasons. Fed. R. Evid. 403. This balancing test necessarily affords the trial court considerable discretion. We find no abuse of that discretion in the court's decision to exclude the document.

The district court concluded that Nowack's document had little or no proper probative value as to Jordache's intentions, but had an obvious capacity to cause prejudice. We agree. So far as the evidence shows, the job for which Nowack was hired by Jordache had nothing to do with the development of the double horsemen marks. He was apparently hired to collect quotations from famous people relating to the sport of polo. Accordingly, Nowack was not Jordache's authorized representative on the issue of the creation of the double horsemen marks. His state of mind was not attributable to Jordache. Furthermore, so far as the evidence showed, Nowack had no knowledge of Jordache's intentions relating to the marks. There was little or no basis for finding that the sentiments he expressed in the document characterized Jordache's intentions in its development of its marks. The proper probative value of the evidence was either minimal or non-existent and its capacity for prejudice was high. We find neither error nor abuse of discretion in the district court's determination to exclude it.

## Conclusion

We affirm the judgment of the district court.

18