12-1346-cv
U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of February, two thousand thirteen.

PRESENT:
> REENA RAGGI,
> PETER W. HALL,
> CHRISTOPHER F. DRONEY,
> > *Circuit Judges.*

---------------------------------------------------------------------

UNITED STATES POLO ASSOCIATION, INC., USPA PROPERTIES, INC.,
> > *Plaintiffs-Counter-Defendants-Appellant*s,

> v.                                              No. 12-1346-cv

PRL USA HOLDINGS, INC.,
> > *Defendant-Counter-Claimant-Appellee*,

L'OREAL USA, INC.,
> > *Intervenor-Defendant-Counter-Claimant-Appellee*.

---------------------------------------------------------------------

APPEARING FOR APPELLANTS:     GEORGE   A.   STAMBOULIDIS (Gerald J. Ferguson, Tracy L. Cole, David J. Sheehan, Thomas D. Warren, *on the brief*), Baker & Hostetler LLP, New York, New York.

APPEARING FOR APPELLEE:     WILLIAM   ROBERT GOLDEN (John M. Callagy, Matthew David Marcottee, *on the brief*), Kelley   Drye & Warren, LLP, New York, New York.

APPEARING FOR INTERVENOR:     ROBERT L. SHERMAN, Paul Hastings LLP, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Robert W. Sweet, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on March 5, 2012, is AFFIRMED.

In this latest round of litigation under the Lanham Act, 15 U.S.C. § 1051 <u>et seq.</u>, and New York State common law, we again deal with claims and counterclaims by plaintiffs, United States Polo Association, Inc., since 1890 the governing body for the sport of polo in this country, and its licensing subsidiary, USPA Properties, Inc. (together, "USPA"); and defendants PRL USA Holdings, Inc. and L'Oreal USA, Inc. (together "PRL"), respectively the owner and exclusive licensee of trademarks of the Polo Ralph Lauren Corporation. USPA here appeals from: (1) the dismissal of its action for a declaratory judgment approving its use of its Double Horsemen mark, accompanied by the words "U.S. POLO ASSN.," "USPA," and/or "1890," in the sale of men's fragrances; and (2) the entry of a permanent

injunction in favor of defendants that precludes USPA's use of these marks in connection with fragrances and related products, as well as the use in connection with any product or marks confusingly similar to PRL's own marks. See U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc., 800 F. Supp. 2d 515 (S.D.N.Y. 2011).

USPA's many challenges to the district court's rulings effectively fall into four categories: (1) USPA's prior use of its Double Horsemen logo, as well as favorable rulings in prior litigation in 1984 and 2006, preclude adverse findings relating to the factors set forth in Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492 (2d Cir. 1961); (2) the apparel and fragrance markets are so closely related that USPA's adjudicated right to use its Double Horsemen logo on apparel implies a right to extend its use to fragrances; (3) various flaws infect the district court's analysis of the parties' survey evidence; and (4) the permanent injunction is overbroad.

We review the district court's findings as to individual Polaroid factors for clear error, but we review its ultimate determinations of consumer confusion and infringement de novo. See Estee Lauder Inc. v. The Gap, Inc., 108 F.3d 1503, 1510 (2d Cir. 1997). We review the district court's grant of an injunction for abuse of discretion. See NML Capital, Ltd. v. Republic of Argentina, 699 F.3d 246, 257 (2d Cir. 2012). In applying these principles here, we assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

3

1.        Prior Use and Preceding Litigations

        a.        The 1984 Litigation

USPA contends that the district court's infringement finding runs counter to the 1984 decision in U.S. Polo Ass'n, Inc. v. Polo Fashions, Inc., No. 84 Civ 1142, 1984 WL 1309 (S.D.N.Y. 1984) ("the 1984 Opinion"), which, according to USPA, resulted in an Order (the "1984 Order") that "affirmed [USPA's] "right to use its name and a distinctive mounted polo player symbol in connection with a retail licensing program." Appellants' Br. 25. The argument fails because it mischaracterizes the results of the 1984 litigation. In its 1984 Opinion, the district court found infringement, see 1984 Opinion, 1984 WL 1309, at *10, and broadly enjoined USPA from using its name or marks in a way likely to cause confusion with those of PRL, 1984 Order at 4. Neither the 1984 Opinion nor the 1984 Order established any right of USPA to use any name or logo without challenge from PRL; they simply clarified that the Order did not itself bar USPA from conducting a retail licensing program using "a mounted polo player . . . symbol which is distinctive from the [PRL mark] in its content and perspective," and that was not likely to cause confusion with PRL. 1984 Order at 5-6. Whether a particular polo player symbol was sufficiently distinctive to avoid such confusion was left as an open question for future determination.

        Thus, nothing in the 1984 Opinion and Order precluded the district court from finding infringement by USPA in the context of this case.

4

b.  The 2006 Apparel Litigation

The same conclusion obtains with respect to 2006 litigation over USPA's use of its mark and name on apparel. There, a jury found that USPA's use of a solid version of its Double Horsemen mark, unaccompanied by text, infringed PRL's mark. At the same time, however, the jury found no infringement in USPA's use of that same version of the mark accompanied by the letters "U.S.P.A."; or of an outlined version of the mark, either alone or accompanied by the letters "U.S.P.A." See PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc., 520 F.3d 109, 110 (2d Cir. 2008) (affirming judgment of the district court). USPA submits that these jury findings precluded the district court, in this case, from finding similarity, bad faith, or confusion in its use of its outlined Double Horsemen logo accompanied by the words "U.S. POLO ASSN.," "USPA," or "1890."

We reject this argument because of the contextual difference between the 2006 litigation and this action, the former of which involved the apparel industry, while this involves the men's fragrance industry. As this court recognized in Brennan's, Inc. v. Brennan's Rest., L.L.C., 360 F.3d 125, 133 (2d Cir. 2004), similarity analysis "focuses on the particular industry where the marks compete." Thus, a finding that there is not similarity indicative of infringement in one industry does not, as a matter of law, preclude a finding of similarity in another.

5

c.    <u>Prior Use</u>

USPA contends that the district court clearly erred in finding bad faith in light of USPA's use of its Double Horsemen logo and "U.S. POLO ASSN." name to sell fragrances in 1998, four years before PRL introduced "Polo Blue," and its use of the Double Horsemen logo on apparel since 2006.  Neither argument is persuasive.  The fact that USPA was authorized to use its Double Horsemen logo in one industry—apparel—does not necessarily mean that it acted with good faith in using the same marks here at issue in a different industry—men's fragrances.  Logically, nothing about USPA's legitimate prior use precluded the district court from concluding that the circumstances of USPA's move into the fragrance industry demonstrated that "the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product"—the hallmarks of bad faith.  <u>Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.</u> (internal quotation marks omitted), 269 F.3d 114, 124 (2d Cir. 2001) (internal quotation marks omitted).  Further, while Polo Blue had not yet been introduced in 1998, PRL had been selling other fragrances bearing its polo player logo since 1978.  Moreover, in assessing USPA's good faith, the district court was entitled to consider that it was only in 2009, seven years <u>after</u> PRL introduced Polo Blue, that USPA designed a men's fragrance using the marks at issue on a dark blue package.

Finally, the absence of evidence of confusion between USPA's and PRL's marks in the apparel industry does not, as a matter of law, compel a finding that there would be no confusion between the marks in the fragrance industry. We thus identify no clear error in the district court's determination that "[l]ack of confusion as to apparel may or may not be indicative of lack of confusion as to fragrances." U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc., 800 F. Supp. 2d at 532.

2.    Similarity of Apparel and Fragrance Markets

USPA contends that because of similarities in the apparel and fragrance markets, its history of selling branded apparel gives rise to a "right to expand its use of the mark into the related fragrance market," as a "natural progression." Appellants' Br. 34–35. USPA cites no supporting authority for its argument, which in any case fails to address the relevant issue: whether USPA's challenged fragrance packaging was likely to cause confusion with PRL's fragrances. Cf. Physicians Formula Cosmetics, Inc. v. W. Cabot Cosmetics, Inc., 857 F.2d 80, 82 n.1 (2d Cir. 1988) (noting that "expansion of business doctrine" does not protect even senior user when another user has long been active in field to which expansion is sought). Times Mirror Magazines, Inc. v. Field & Stream Licenses Co., 294 F.3d 383 (2d Cir. 2002), cited by USPA, does not support its position. There, two longtime rightful users of a single mark—the name "Field and Stream"—sought to enter new markets that, previously, "neither had attempted to enter." Id. at 392. Here, USPA, already enjoined from using marks confusingly similar to those of PRL, seeks to enter a market in which PRL is well established.

In sum, we identify no error in the district court's rejection of USPA's argument that its lawful use of its Double Horsemen logo and word marks in the apparel market afforded it a right to use these marks to enter the fragrance market.

3.    Surveys

In reviewing surveys conducted by both parties on the likelihood of confusion from USPA's use of its Double Horsemen logo and word marks to sell men's fragrances, the district court afforded no weight to USPA's survey evidence, in part because its control marks included the word "polo," and, in one case, a mounted polo player image.  Meanwhile, the district court found PRL's survey evidence, based on a control that did not reference the sport of polo, "suggestive of actual confusion." U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc., 800 F. Supp. 2d 515, 536 (S.D.N.Y. 2011).  Insofar as USPA challenges both determinations, we identify no abuse of discretion in the district court's determination that control marks had to omit the word "polo" to be reliable.  See generally Shari Seidman Diamond, Reference Guide on Survey Research, in Reference Manual on Scientific Evidence 229, 258 (Federal Judicial Center ed., 2d ed. 2000) (stating that control should "share[] as many characteristics with the experimental stimulus as possible, with the key exception of the characteristic whose influence is being assessed").  USPA contends that the word "polo" was not one of the elements being assessed because the sport itself is not trademarked, and the 1984 Order did not bar USPA's use of the word in a non-infringing manner.  We are not persuaded.  USPA's right to brand a fragrance with its logo, accompanied by the word "polo"—the same word long highlighted by PRL to sell its fragrances—is one of the critical

8

issues for determination in this litigation. Indeed, to determine whether USPA had violated the 1984 Order, the district court had to determine whether USPA had unduly emphasized the word "polo" in its trade dress. Under these circumstances, the district court did not clearly err in identifying the word "polo" as one of the "characteristic[s] whose influence is being assessed" and in discounting a USPA survey that had not excluded the word from its control mark.

USPA further complains that one of PRL's control marks, the "Mustang Grille" logo, was too well known to serve as an effective control. While the challenged logo may be well known as an automobile mark, USPA does not contend that it is well known in the fragrance field. We therefore identify no clear error in the district court's decision to rely on a study using the mark as a control with respect to fragrances.

4.  Permanent Injunction

USPA faults the district court for applying a presumption of irreparable harm in deciding to enter a permanent injunction, and for ordering an injunction that sweeps more broadly than its findings warrant, and that is vague and therefore overbroad in its proscriptions. These complaints are meritless.

9

a.     Irreparable Harm

We need not here decide whether a presumption of irreparable harm from trademark infringement can apply in light of eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006), and Salinger v. Colting, 607 F.3d 68 (2d Cir. 2010), because no such presumption was applied here.  Rather, the district court found that PRL would be irreparably harmed by ceding to USPA control over its reputation and goodwill.  See U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc., 800 F. Supp. 2d at 541.  While a similar finding might be made in many infringement cases, it is a factual finding nonetheless, and not simply the product of a legal presumption.  Accordingly, we identify no abuse of discretion in the district court's irreparable-harm finding.

b.     Scope of the Injunction

USPA contends that the permanent injunction sweeps too broadly because the challenged designs all featured some combination of the Double Horsemen logo and the phrase "U.S. POLO ASSN." or "USPA," while the injunction forbids, not only such combinations, but also the use of the Double Horsemen logo or the word "POLO" alone in connection with fragrances.  The argument fails in light of USPA's history of repeated infringement and the district court's finding of bad faith.  Indeed, affirming the judgment of the district court in the 2006 apparel litigation, we observed that "[a]n obligation on the part of a previously adjudicated infringer to maintain a safe distance from infringing the plaintiff's marks has been found to serve a useful purpose in fashioning injunctions based on a finding of infringement, especially where the infringement was abusive or in bad faith."

10

PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc., 520 F.3d at 117 (internal citations omitted). The breadth of the challenged injunction is particularly warranted given that the 1984 Order had explicitly barred USPA's confusing use of either the word "polo" or any mark confusingly similar to the PRL logo, and the district court found that USPA had violated that injunction. See U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc., 800 F. Supp. 2d at 527. This case presents no concerns akin to those raised in Starter Corp. v. Converse, Inc., 170 F.3d 286 (2d Cir. 1999), where an injunction covered an entire market that was not the one in which the infringing mark was used, and prohibited use of the mark for a category of goods that had been judicially admitted not to be at issue, see id. at 300. Here, the injunction pertains to use of the Double Horsemen logo and the word "polo" in the fragrance market, the focus of this litigation, as well as closely related fields such as cosmetics. To the extent it reaches any further, it merely tracks the language of the 1984 Order, to which USPA was already subject. Moreover, the injunction does not impede USPA's use of its outlined Double Horsemen mark on apparel, which was found non-infringing in the 2006 litigation, a determination that has issue-preclusive effect here.

5.     Conclusion

We have considered plaintiffs' remaining arguments and conclude that they are without merit. Accordingly, the district court's judgment of dismissal and entry of a permanent injunction are AFFIRMED. USPA's motion to supplement the record on appeal is DENIED, because the material that it seeks to add was neither before the district court at the time of the decision below, nor even in existence at that time.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court