**13-1038-cv(L)**
**U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2013

(Argued: February 19, 2014          Decided: May 13, 2015)

Docket Nos. 13-1038-cv(L), 13-1130-cv(CON)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
UNITED STATES POLO ASSOCIATION, INC., USPA PROPERTIES, INC.,

        Plaintiffs-Counter-Defendants-Appellants,

JRA TRADEMARK COMPANY, LTD.,
        Intervenor-Plaintiff-Appellant,

        v.

PRL USA HOLDINGS, INC., L'OREAL USA, INC.,

        Defendants-Counter-Claimants-Appellees.
- - - - - - - - - - - - - - - - - - -- - - - - - - - - - - - - - - -

B e f o r e:   KEARSE, WINTER, and WESLEY, Circuit Judges.

        Appeal from a contempt judgment entered in the United States District Court for the Southern District of New York (Robert W. Sweet, Judge).  We vacate and remand.

<div style="margin-left:50%">

KYLE C. BISCEGLIE (Matteo J. Rosselli, on the brief), Olshan Frome Wolosky LLP, New York, NY, for Plaintiffs-Counter-Defendants-Appellants.

MICHAEL S. SOMMER (Jessica L. Margolis & Scott D. Tenley, on the brief), Wilson Sonsini Goodrich & Rosati, P.C., New York, NY, for Intervenor-Plaintiff-Appellant.

</div>

1

JOHN M. CALLAGY (William R. Golden, Jr., Andrea L. Calvaruso, Taraneh J. Marciano, on the brief), Kelley Drye & Warren LLP, New York, NY, for Defendants-Counter-Claimants-Appellees.

WINTER, Circuit Judge:

This appeal is the latest chapter in a now over-30-year dispute involving trademarks relating to the sport of polo used on consumer goods. United States Polo Association, Inc. and USPA Properties, Inc. (together, "USPA") and USPA's licensee, JRA Trademark Co., appeal from Judge Sweet's order of contempt finding USPA in violation of a permanent injunction. The court held that appellants' logo on eyewear products was confusingly similar to the logo used by appellees PRL USA Holdings, Inc. and L'Oreal USA, Inc. (together, "PRL") on PRL's eyewear products. USPA argues that the underlying injunction did not enjoin all uses of the mark. We agree and vacate the contempt order and remand for further proceedings.

BACKGROUND

USPA is the governing body of the sport of polo but also markets certain consumer goods, often in competition with PRL. PRL owns the trademark rights and exclusive licenses for the Polo Ralph Lauren brand, which includes the "Polo Player Logo" -- an image depicting a mounted polo player with a raised mallet -- and the "POLO" word mark.

2

a)    The 1984 Injunction

The conclusion of the opening litigation occurred in 1984, when, after a bench trial, Judge Sand issued an injunction against USPA.  U.S. Polo Ass'n v. Polo Fashions, Inc., No. 84 Civ. 1142 (LBS), 1984 WL 1309 (S.D.N.Y. Dec. 6, 1984) ("1984 Injunction").  The 1984 Injunction prohibited USPA, inter alia, from "using any of the [PRL marks] or any name or mark or symbol which is confusingly similar thereto, in connection with the sale . . . of any goods or the rendering of any services[.]"  U.S. Polo Ass'n v. PRL USA Holdings, Inc., No. 09 Civ. 9476, 2013 WL 837565, at *1 (S.D.N.Y. Mar. 6, 2013).  While the 1984 Injunction applied to all markets, the term "confusingly similar" was not a bright line.  Rather, as amplified in subsequent litigation, discussed infra, its meaning turned on a comparison of competing logos and the words associated with them, see PRL USA Holdings, Inc. v. U.S. Polo Ass'n, 520 F.3d 109 (2d Cir. 2008), and varied with the nature of the various markets in which the logos and words are used, see U.S. Polo Ass'n v. PRL USA Holdings, Inc., 511 F. App'x 81 (2d Cir. 2013) (summary order).

b)    The Apparel Litigation

The mark at issue in this appeal is styled the "Double Horsemen Mark."  It depicts two mounted polo players vying for a ball.  When USPA began using four variations of this mark in 1996, PRL brought an action seeking to enjoin its use on a variety of products ("Apparel Litigation").

3

In 2003, the parties resolved most of the issues in a settlement agreement involving a number of USPA logos and word marks. However, the parties went to trial on whether four varieties of the Double Horsemen Mark infringed PRL's marks. After a three-week trial, the jury concluded that three of four Double Horsemen Marks, see Note 1 infra, did not infringe PRL's marks in the markets for apparel, leather goods, and watches. PRL USA Holdings, Inc. v. U.S. Polo Ass'n, No. 99-cv-10199(GDB), 2006 WL 1881744, at *3 (S.D.N.Y. July 7, 2006). We affirmed. PRL USA Holdings, Inc., 520 F.3d at 119.

c)    The Fragrance Litigation and Injunction

After conclusion of the Apparel Litigation, USPA continued using the Double Horsemen Mark[1] on a variety of products. In 2009, USPA expanded its marketing into fragrance products. After failed negotiations with PRL, USPA sought a declaratory judgment that, inter alia, the Double Horsemen Mark did not violate Sections 43(a) and (c) of the Lanham Act, 15 U.S.C. §§ 1125(a), (c), when used in connection with its fragrance products ("Fragrance Litigation"). PRL and its licensee, L'Oreal USA, Inc., brought trademark counterclaims for infringement and sought an injunction against the use of the Double Horsemen Mark, the

---

[1] The "Double Horsemen Mark" hereinafter refers only to the three of four Double Horsemen Marks that the Apparel Litigation jury found did not infringe on PRL's marks. See PRL USA Holdings, Inc., 2006 WL 1881744, at *1.

4

word mark, "U.S. POLO ASSN," and "1890" (the year USPA was founded) on "fragrance or cosmetics products."

After a bench trial, Judge Sweet rejected USPA's claims, holding that using the Double Horsemen Mark on fragrance products violated PRL's trademark rights. U.S. Polo Ass'n v. PRL USA Holdings, Inc., 800 F. Supp. 2d 515, 542 (S.D.N.Y. 2011). The court held that USPA's favorable verdict in the Apparel Litigation did not dictate the outcome in the Fragrance Litigation because the apparel decision did not "address[] the marks at issue here in the fragrance market." Id. at 529.

In March 2012, the district court entered a permanent injunction enjoining USPA from using the Double Horsemen Mark on fragrances and related products ("Fragrance Injunction"). Paragraph 3, the basis of the district court's contempt finding in the present matter, enjoined USPA from:

> a. Using the Double Horsemen Mark . . . alone or in combination with any name, symbol, device, or other word(s) in connection with the advertising, promotion, offering for sale or sale of fragrances or related products such as cosmetics, personal care products and beauty products;
>
> b. Using the word "POLO" alone or in combination with any name, symbol, device or other word(s) in connection with the advertising, promotion, offering for sale or sale of fragrances or related products such as cosmetics, personal care products and beauty products;

5

> c. Using the PRL marks or any other name or mark, including the image of one or more mounted polo players, that constitutes a colorable imitation of or is confusingly similar to PRL's Polo Player Logo . . . or "POLO" word mark in connection with the sale or offering for sale of any goods or rendering of any services;
>
> d. Using for any commercial purpose whatsoever any symbol, logo, trade name, trademark, or trade dress that which is calculated to or has the effect of representing that the products or services of or licensed by the USPA Parties are associated with, sponsored, endorsed, or authorized by, or are in any way connected or associated with the PRL Parties or any entity affiliated with them.

U.S. Polo Ass'n, 2013 WL 837565, at *4; see also U.S. Polo Ass'n v. PRL USA Holdings, Inc., No. 09 Civ. 9476, 2012 WL 697137, at 4-5 (S.D.N.Y. Mar. 5, 2012). USPA appealed the injunction, and we affirmed by summary order. U.S. Polo Ass'n, 511 F. App'x at 82. On its appeal, USPA argued that the Apparel Litigation precluded the injunction. However, we rejected that argument on the ground that the issue of confusing similarity regarding USPA's use of the Double Horsemen Mark was market-specific. Id. at 83-84. We also rejected USPA's argument that the Fragrance Injunction's terms were overbroad, in part because of the district court's finding of bad faith which we declined to overturn, but also because Paragraph 3(c), which applies to all markets, merely tracked the 1984 Injunction, to which USPA was already subject. Id. at 86.

6

d)    The Contempt Order

Between 2009 and 2012, USPA sold nearly one million pairs of sunglasses bearing the Double Horsemen Mark.  In August 2012, PRL moved for an order of contempt, claiming that USPA violated both the 1984 Injunction and the Fragrance Injunction by its use of the Double Horsemen Mark on eyewear.  The district court issued a contempt order based on its finding that there was clear and convincing evidence that USPA violated Paragraphs 3(c) and (d) of the Fragrance Injunction.  U.S. Polo Ass'n, 2013 WL 837565, at *9-14.[2]

The district court held that:  (i) Paragraph 3(c) of the Fragrance Injunction clearly and unambiguously applied to all markets, id. at *9-12; (ii) PRL proved by clear and convincing evidence that "the Double Horsemen Mark is a 'colorable imitation' or is 'confusingly similar' to PRL's Polo Player Logo," id. at *12; and (iii) USPA did not diligently comply with the Fragrance Injunction, id. at *13.  In reaching these conclusions, the court declined to engage in a market-specific analysis of whether use of the Double Horsemen Mark in eyewear was confusingly similar to PRL's use of its marks in that market.  In relying on Paragraph 3(c) of the Fragrance Injunction, the court held that a market-by-market analysis was inappropriate in

---

[2] The district court also granted JRA Trademark's motion to intervene, 2013 WL 837565, at *7-8, and declined to decide whether USPA was in contempt of the 1984 Injunction, id. at *14.

7

the context of a motion for contempt. This ruling was based on our decision in Wella Corp. v. Wella Graphics, Inc., 37 F.3d 46, 48 (2d Cir. 1994) (holding that the district court erred in considering the Polaroid factors, Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961), in making its contempt determination).[3]

Finally, because PRL had been on notice of USPA's use of the Double Horsemen Mark in eyewear for at least two years prior to its motion for a contempt judgment, the court awarded PRL only prospective relief -- that is, "future profits of any sales of sunglasses containing the Double Horsemen Mark sixty days following the [court's] order." U.S. Polo Ass'n, 2013 WL 837565, at *15.

                              DISCUSSION

We review a contempt order with a "more exacting" version of the abuse-of-discretion standard. Perez v. Danbury Hosp., 347 F.3d 419, 423 (2d Cir. 2003). Before issuing a contempt order, a district court must find that the alleged contemnor had notice of the underlying order, that the terms of the order were clear and unambiguous, and that proof of noncompliance was clear and

---

[3] We note that the Polaroid test is not strictly in issue here because Polaroid involved a plaintiff alleging trademark infringement within a market the plaintiff had not yet entered. Rather, USPA and PRL appear to have been competing head-to-head in the same markets, similar to the parties in Brennan's Inc. v. Brennan's Rest., L.L.C., 360 F.3d 125, 133 (2d Cir. 2004) ("Because the ultimate issue is the likelihood of confusion, analysis focuses on the particular industry where the marks compete.") (emphasis added).

8

convincing. Perfect Fit Indus. v. Acme Quilting Co., Inc., 646 F.2d 800, 808 (2d Cir. 1981). The district court's underlying factual determinations are reviewed for clear error, but questions of law, including interpretation of the order, are reviewed de novo. Latino Officers Ass'n of N.Y., Inc. v. City of New York, 558 F.3d 159, 164 (2d Cir. 2009).

Central to this appeal is whether the district court's finding of a violation of the Fragrance Injunction by USPA's use of the Double Horsemen Mark on eyewear required application of market-specific standards.

Our resolution of what conduct is barred by the Fragrance Injunction and of whether USPA engaged in such conduct requires scrutiny of the history of the parties' litigation. A critical fact in this history is that, after entry of the 1984 Injunction, a jury in the Apparel Litigation found the Double Horsemen Mark to be non-infringing -- not "confusingly similar" to, or a "colorable imitation" of, PRL's marks -- when used as a logo in marketing apparel, leather goods, and watches. This verdict clearly indicated at the very least that use of the Double Horsemen Mark is non-infringing in some markets. In the Fragrance Litigation, the district court viewed the verdict in the Apparel Litigation as not binding because of the differences between the apparel and fragrance/cosmetic markets. We agreed and affirmed the Fragrance Injunction. U.S. Polo Ass'n, 511 F. App'x at 82.

9

However, in the present matter -- the contempt proceeding based on the Fragrance Injunction -- the district court concluded that the Fragrance Injunction barred use of the Double Horsemen Mark in every market but that for apparel.  U.S. Polo Ass'n, 2013 WL 837565, at *10, 12.  We disagree with that ruling.  The fact that the Apparel Litigation does not shield USPA's use of a Double Horsemen Mark on eyeglasses from an infringement finding does not, without more, render it liable for infringement in that and all other markets save for apparel.  Indeed, our affirmance of the Fragrance Injunction, in holding that infringement in one industry does not "as a matter of law, preclude a finding of similarity in another," U.S. Polo Ass'n, 511 F. App'x at 83, stated that a market-by-market analysis is needed.  Id.

To be sure, Paragraph 3(c) of the Fragrance Injunction applies to all markets, but the language in question merely repeats that of the 1984 Injunction.  That Injunction, as our holding in affirming the Fragrance Injunction states, requires a market-by-market analysis regarding confusing similarity.  Id. at 86 (noting that the Fragrance Injunction pertains to the fragrance market and closely related fields; "[t]o the extent it reaches any further, it merely tracks the language of the 1984" Injunction).

Given the present record, it is not apparent that the differences between the fragrance/cosmetic and eyeglass

10

industries are not as great as the differences between the apparel and fragrance/cosmetic industries. Indeed, at least without an evidentiary record demonstrating otherwise, the eyeglass and apparel industries seem closer to each other than either is to the fragrance/cosmetic market. But, in holding USPA in contempt, the district court declined to apply a market-specific test.

In holding that the Fragrance Injunction was violated, the district court explicitly rejected USPA's argument that the order "is limited to fragrance[/cosmetic] products . . . and proof of confusion." U.S. Polo Ass'n, 2013 WL 837565, at *9. That rejection is not consistent with our decision affirming the Fragrance Injunction or with the arguments that PRL made on that appeal. To be sure, Paragraph 3(c) bars use of "the image of one or more mounted polo players, that constitute a colorable imitation of or is confusingly similar to PRL's Polo Player logo . . . in connection with the sale . . . of any goods, . . . ." However, as noted, that language merely tracks the 1984 Injunction which, as explained earlier, does not bar use of the Double Horsemen Mark in all markets. When entry of the Fragrance Injunction was challenged by USPA on its appeal, PRL's brief emphasized over and over again that the Fragrance Injunction was limited to the fragrance market, Brief for Defendant-Counter-Claimant-Appellee at 15, 19, 20, 23, 24, U.S. Polo Ass'n, 511 F.

11

App'x 81 (No. 12-1346), and to the prohibitions of the 1984 Injunction, id. at 29, 31-32.  Most importantly, in affirming the Fragrance Injunction against an overbreadth claim, we clearly read the order to apply only to the fragrance/cosmetics market and to be limited to the scope of the 1984 Injunction.  We stated:

> This case presents no concerns akin to those raised in Starter Corp. v. Converse, Inc., 170 F.3d 286 (2d Cir. 1999), where an injunction covered an entire market that was not the one in which the infringing mark was used, and prohibited use of the mark for a category of goods that had been judicially admitted not to be at issue, see id. at 300. Here, the injunction pertains to use of the Double Horsemen logo and the word "polo" in the fragrance market, the focus of this litigation, as well as closely related fields such as cosmetics.  To the extent it reaches any further, it merely tracks the language of the 1984 Order, to which USPA was already subject.  Moreover, the injunction does not impede USPA's use of its outlined Double Horsemen mark on apparel, which was found non-infringing in the 2006 litigation, a determination that has issue-preclusive effect here.

U.S. Polo Ass'n, 511 F. App'x at 86.

Therefore, the fact that the Apparel Litigation does not preclude the Fragrance Litigation does not imply that the Double Horsemen Mark infringes PRL's marks in every market except apparel.  It simply means that a finding of confusing similarity must be made on a market-by-market analysis.

12

We acknowledge that confusion may exist as to whether there is an automatic bar to application of a market-by-market test in contempt proceedings.  In declining to apply such a test, the district court relied upon our decision in Wella, in which we held that undertaking a market-by-market Polaroid analysis was error in that particular contempt proceeding.  In Wella, a hair-products manufacturer named "Wella Corporation" sought an injunction against a graphics company named "Wella Graphics" from using the name "Wella."  Wella Corp., 37 F.3d at 47.  Because Wella Graphics never answered the complaint, the district court entered a default judgment, enjoining Wella Graphics from "[u]sing Wella or any mark confusing[ly] similar to [Wella Corporation's] mark Wella."  Id.  Wella Graphics then slightly altered its name to Wello Graphics.  The district court held that this change did not warrant a contempt order because the two companies were not in direct competition with one another.  Id. On appeal, we held that the district court's use of a market-by-market analysis was error.  Id. at 48.  However, in Wella, the genuinely contested issue was not whether the name "Wello" was "confusingly similar" to the name "Wella" -- it was an obvious attempt at evading the injunction -- but whether the lack of direct competition between the parties rendered the injunction inapplicable.  Id.  Of course, it did not.

Unlike Wella, the present matter is not a case of a minor and immaterial alteration of an unquestionably infringing mark.

13

Rather, it is a dispute over the use of marks that have been held not to be confusingly similar to PRL's marks in another major market. By contrast, Wella is limited to cases where a clearly confusingly similar mark is governed by an injunction that applies to all markets.

However, we add a word of caution about the use of market-specific standards in contempt proceedings. The parties bound by an injunction are entitled to clear notice of what specifically they may or may not do, and any test involving a non-exhaustive list of multiple factors, see Brennan's Inc., 360 F.3d at 130, may not yield easily predictable results or fair notice. Use of market-specific standards in contempt proceedings will, therefore, lead to an order of contempt only when reasonably obvious infringement is shown by clear and convincing evidence.

There is no record before us as to the application of market-specific factors to the eyeglass and fragrance/cosmetic markets, and we do not preclude a resumption of the contempt proceedings on remand. However, because of the often unpredictable results of market-by-market analysis, a finding that the Double Horsemen Mark is, when used on eyewear, confusingly similar to PRL's marks, while sufficient to find liability in an infringement proceeding, is not sufficient to support a contempt finding. To hold USPA in contempt, two additional findings must be made: (i) a reasonable firm in

14

USPA's position, knowing the context of the Fragrance Injunction -- in particular, the verdict in the Apparel Litigation and our order affirming the Fragrance Injunction that adopted PRL's arguments described above -- would have been on clear notice that use of the Double Horsemen Mark on eyewear violated the injunction; and (ii) the finding of confusing similarity is supported by clear and convincing evidence. The present record does not support either such finding.

CONCLUSION

We therefore vacate and remand for further proceedings in accordance with this opinion. Given the efforts this panel has expended on this matter and its resultant familiarity with it, we order that the clerk refer any appeal from an order of contempt based on the Fragrance Injunction involving eyewear to this panel. This directive does not apply to an appeal from a finding of infringement or non-infringement in a new infringement proceeding involving eyewear or one not involving eyewear.