20-1-bk (L)
In re: Gravel

# United States Court of Appeals
# for the Second Circuit

AUGUST TERM 2020
Nos. 20-1-bk(L), 20-2-bk, 20-3-bk


IN RE: NICHOLAS GRAVEL, AMANDA GRAVEL,
Debtors.


PHH MORTGAGE CORPORATION,
Creditor-Appellant,


v.


JAN M. SENSENICH,
Trustee-Appellee.


ARGUED: FEBRUARY 4, 2021
DECIDED: AUGUST 2, 2021


Before:      JACOBS, BIANCO, PARK, Circuit Judges.

PHH Mortgage Corp. appeals from the order of the United States

Bankruptcy Court for the District of Vermont (Brown, J.) imposing sanctions in

three chapter 13 cases.  PHH was sanctioned $75,000 for violation of Bankruptcy

Rule of Procedure 3002.1 and $225,000 for violation of bankruptcy court orders.

PHH argues that Rule 3002.1 does not authorize punitive monetary sanctions, and that PHH did not violate the court orders as a matter of law. We agree.

We VACATE the sanctions order and REVERSE.

JUDGE BIANCO concurs in part and dissents in part in a separate opinion.

_____

MATTHEW J. DELUDE, Primmer Piper Eggleston & Cramer PC, Manchester, NH (Alexandra E. Edelman, Douglas J. Wolinsky, on the brief) for Creditor-Appellant PHH Mortgage Corp.

MAHESHA P. SUBBARAMAN, Subbaraman PLLC, Minneapolis, MN, for Trustee-Appellee Jan M. Sensenich.

Henry E. Hildbrand, III, Nashville, TN, for Amicus Curiae National Association of Chapter 13 Trustees.

Tara Twomey, National Consumer Bankruptcy Rights Center, San Jose, CA, for Amici Curiae National Consumer Bankruptcy Rights Center, National Association of Consumer Bankruptcy Attorneys, National Consumer Law Center, Legal Services Vermont, Inc., and Housing Clinic of Jerome N. Frank Legal Services Organization at Yale Law School.

DENNIS JACOBS, Circuit Judge:

This appeal involves punitive sanctions imposed in three chapter 13 cases in Vermont. The debtor households are the Gravels, the Beaulieus, and the Knisleys. The sanctioned party is the creditor-appellant PHH Mortgage Corp., which holds or services the mortgage on the principal residence of each debtor household. The appellee, Jan Sensenich, is the chapter 13 standing Trustee for the District of Vermont. The Trustee shepherds the debtors through the chapter 13 process and oversees their payments to PHH under their respective chapter 13 plans.

PHH sent monthly mortgage statements listing fees totaling $716 that had not been properly disclosed in the three cases. The United States Bankruptcy Court for the District of Vermont (Brown, J.) sanctioned PHH $225,000 for violation of court orders issued in the Gravel and Beaulieu cases, which declared that the debtors were current on their mortgages and enjoined PHH from challenging that fact in any other proceeding.

The bankruptcy court also sanctioned PHH $75,000 for violation of Bankruptcy Rule of Procedure 3002.1 in all three cases. Rule 3002.1(c) requires

3

that a creditor give formal notice to the debtor and trustee of new post-petition fees and charges, and it gives the bankruptcy court power to impose sanctions for non-compliance.

The bankruptcy court's sanctions order was certified for direct appeal. We hold that Rule 3002.1 does not authorize punitive monetary sanctions, and that PHH did not, as a matter of law, violate the court orders.

The sanctions order is VACATED and REVERSED.

## BACKGROUND

Frustration with PHH began early in the Gravel case, which was filed in February 2011. The Gravels' plan provided for them to remain in their home while making "conduit" monthly mortgage payments for 60 months. Under the District of Vermont's bankruptcy procedures, the Gravels paid the Trustee who then disbursed the payment to PHH.

Pursuant to a (since superseded) standing order, the Trustee accounted for the payments in March and April as an "administrative arrearage" rather than as a regular post-petition monthly mortgage payment. In effect, those payments

4

were treated as a pre-petition arrearage paid as a special claim, so that regular post-petition payments did not begin until the third month. Monthly payments were thus forwarded to PHH as regular mortgage payments beginning with May. Because of this accounting, PHH incorrectly termed the loan delinquent and began to add late penalties on mortgage payments for March and April. PHH sent monthly mortgage statements reflecting this delinquency, and the Trustee responded with three letters in 2012 and 2013 explaining PHH's error, to which PHH failed to respond.

When PHH threatened foreclosure, the Trustee in February 2014 moved to compel PHH to apply the mortgage payments as provided by the chapter 13 plan. The Trustee also requested an award of sanctions to the debtors. PHH corrected the mortgage statements to reflect that the Gravels were current on post-petition payment obligations. PHH promised to prevent future errors. The parties stipulated to a $9,000 sanction, which the bankruptcy court so-ordered in March 2014. (The $9,000 sanction is not the subject of this appeal.)

* * *

Two years later, the Gravels reached the end of their chapter 13 plan. An order on May 20, 2016, confirmed that the Gravels were "current." J. App'x 705. That is, the Gravels had cured all pre-petition arrearages or defaults existing when the case was filed, and made all post-petition payments. (An identical order was issued in the Beaulieu case; they are referenced as "Current Orders.")

When PHH sent another monthly mortgage statement five days later, the Trustee noticed that an old charge for "property inspection fees" was listed under the "loan information" section. Id. at 654. The statement specified that the recorded fee and other account information was provided to comply with local bankruptcy rules and was "not an attempt to collect a debt." Id. Further, the fee--which had grown to $258.75 over at least 25 monthly statements--was not reflected in the "total payment due." Id. The only payment due was the principal/interest and escrow.

Nevertheless, the Trustee moved for a finding of contempt and sanctions on the ground that the charge violated the Current Order, and that each of the 25 charges violated Bankruptcy Rule 3002.1. Rule 3002.1 governs installment

6

payments on a home mortgage in a plan under chapter 13. Fed. R. Bankr. P. 3002.1(a). Under the rule, a mortgage creditor "shall file and serve on . . . the trustee a notice itemizing all fees, expenses, or charges" that the creditor "asserts are recoverable against the debtor" and serve this notice "within 180 days after the date on which the fees, expenses, or charges are incurred." Fed. R. Bankr. P. 3002.1(c). If a creditor fails to comply, a bankruptcy court may preclude the creditor from presenting the claim as evidence in the case, or award the debtor other relief including expenses and attorney's fees. Fed. R. Bankr. P. 3002.1(i).

In response to the Trustee's motion, PHH admitted that the fee had not been properly noticed within 180 days under Rule 3002.1, removed the fee from the Gravels' mortgage statement, and opposed the motion for sanctions.

\* \* \*

Late-noticed fees also appeared on the Beaulieus' monthly mortgage statements. They filed their chapter 13 case in March 2011. The statements began reflecting a fee for insufficient funds 18 months later and a charge for property inspection two years later; and those fees were still being listed when the bankruptcy court issued the Current Order on May 5, 2016. Twenty days

7

later, PHH sent the Beaulieus a monthly statement, on which the fees were still listed. The insufficient funds fee was $30, and the property inspection fee was $56.25.

Around the time the Trustee filed its motion in the Gravel case, the Trustee moved for a finding of contempt and sanctions in the Beaulieu case on the same basis. PHH removed the charges from the Beaulieus' mortgage statement and opposed the motion.

\* \* \*

Post-filing of the Knisley case, 25 monthly mortgage statements showed a late charge and property inspection fee that had not been properly disclosed within 180 days. The late charge was $124.50, and the property inspection was $246.50. The Trustee moved for sanctions under Rule 3002.1(i), and PHH removed the charge and fee and opposed the motion. PHH was not alleged to be in contempt of a current order because no current order had issued; the Knisleys had not reached the end of their plan.

\* \* \*

After a consolidated hearing, the bankruptcy court granted the Trustee's motions in September 2016. It found that PHH had violated Rule 3002.1(c) 25 times in each case, as well as the two Current Orders. It sanctioned PHH $75,000 pursuant to Rule 3002.1(i). And it sanctioned PHH for the Current Orders violation pursuant to its inherent power and § 105 of the Bankruptcy Code: $200,000 in the Gravel case and $100,000 in the Beaulieu case.

The bankruptcy court noted that it "levies this substantial penalty on PHH to convey a clear message to PHH, and other mortgage creditors, that they may not violate court orders with impunity and will suffer significant monetary sanctions if they conduct their mortgage accounting operations in a manner that fails to fully comply with Rule 3002.1, violates court orders, or threatens the fresh start of Chapter 13 debtors." In re Gravel ("Gravel I"), 556 B.R. 561, 580 (Bankr. D. Vt. 2016), vacated and remanded sub nom. PHH Mortg. Corp. v. Sensenich, No. 5:16-CV-00256, 2017 WL 6999820 (D. Vt. Dec. 18, 2017). PHH was ordered to pay the $375,000 to "Legal Services Law Line of Vermont." Id.

9

The United States District Court for the District of Vermont (Crawford, J.) vacated both sanctions. It held that the $75,000 and $300,000 sanctions exceeded the bankruptcy court's "statutory and inherent powers" because it lacks power to impose "serious punitive sanctions." PHH Mortg. Corp., 2017 WL 6999820, at *7–8. The district court reasoned that bankruptcy courts are ill-equipped to provide the procedural protections that due process requires, and that bankruptcy judges lack the tenure and compensation protections that ensure the judicial independence of Article III judges. The district court observed that the sanctions here were far greater than a punitive sanction of $50,000 that the Ninth Circuit vacated for the same reasons in In re Dyer, 322 F.3d 1178, 1194 (9th Cir. 2003). Remanding the matter, the district court noted that the bankruptcy court may refer a matter for criminal contempt proceedings and sanctions, or may "take steps to enforce its orders short of punitive sanctions of the scope and type imposed in these cases." PHH Mortg. Corp., 2017 WL 6999820, at *9.

The bankruptcy court issued a second sanctions order (the one now before us). See In re Gravel ("Gravel II"), 601 B.R. 873, 903 (Bankr. D. Vt. 2019). It adopted the factual findings of the first order and imposed the same sanctions

10

for the Rule 3002.1 violation. However, the sanctions for violation of the Current

Orders were reduced 25%: from $200,000 to $150,000 in the Gravel case and from

$100,000 to $75,000 in the Beaulieu case. The reduced Current Orders sanctions

were still to be paid to Legal Services; but the Trustee was made the recipient of

the Rule 3002.1 sanction.

PHH appealed the second sanctions order to the district court, but the

Trustee requested the bankruptcy court to certify the order for direct review by

this Court, which the bankruptcy court granted. The Trustee petitioned this

Court for direct review, which we granted.

## DISCUSSION

### A.    Jurisdiction

This case is before us on direct appeal from the bankruptcy court's second

sanctions order. Under 28 U.S.C. § 158(d)(2), a court of appeals has jurisdiction

when the bankruptcy court has certified that an order involves an unresolved

question of law and the court of appeals authorizes a direct appeal of that order.

11

There is no doubt that we have jurisdiction to review the second sanctions order; but we must first clarify the scope of our jurisdiction over this appeal.

The bankruptcy court certified three questions of law. The questions, which the Trustee formulated, concern the power of bankruptcy courts to impose "punitive non-contempt sanctions" under Rule 3002.1, to impose such sanctions under § 105(a), and to impose them "commensurate (in amount) to the violation at hand." In re Gravel, No. 11-10112, 2019 WL 3783317, at *2 (Bankr. D. Vt. Aug. 12, 2019). We authorized direct review.

The Trustee contends that we can (or should) answer all three questions because they were certified. The statute, however, authorizes appeals of "orders," not "questions," and the second sanctions order is the only order on review. See 28 U.S.C. § 158(d)(2)(A). Unless that order poses a question of law, we lack jurisdiction to answer it notwithstanding what questions are certified. See N.Y.C. Health & Hosps. Corp. v. Blum, 678 F.2d 392, 396–97 (2d Cir. 1982) (observing the same with respect to 28 U.S.C. § 1292). Otherwise, we would be rendering an advisory opinion. See Preiser v. Newkirk, 422 U.S. 395, 401 (1975).

12

We may answer the certified questions only insofar as they help resolve the questions of law raised in the issues on appeal: whether the bankruptcy court properly sanctioned PHH for violating the Current Orders, and whether the bankruptcy court properly sanctioned PHH for violating Rule 3002.1.

**B.     Standard of Review**

A bankruptcy court's award of sanctions, including findings of contempt, are reviewed for abuse of discretion.  In re Kalikow, 602 F.3d 82, 91 (2d Cir. 2010). A bankruptcy court "necessarily abuses its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Id. (quoting In re Highgate Equities, Ltd., 279 F.3d 148, 152 (2d Cir. 2002)) (brackets omitted).

The bankruptcy court's factual determinations are reviewed for clear error. U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc., 789 F.3d 29, 33 (2d Cir. 2015). Questions of law and interpretation of an order underlying a contempt finding are reviewed de novo.  Id.

## C.    The $225,000 Sanction

PHH argues that the $225,000 sanction was an abuse of discretion because PHH did not, as a matter of law, violate the Current Orders.  We agree.  Though the orders declared that the debtors were current, they did not enjoin the recording of expired fees on the statements.  Without an express injunction, there is fair ground of doubt as to whether the listed fees can form the basis for contempt.

A bankruptcy court's contempt power, like that of a district court, is "narrowly circumscribed."  Perez v. Danbury Hosp., 347 F.3d 419, 423 (2d Cir. 2003); see Taggart v. Lorenzen, 139 S. Ct. 1795, 1801 (2019) ("[T]he bankruptcy statutes incorporate the traditional standards in equity practice for determining when a party may be held in civil contempt for violating an injunction.").  Accordingly, "our review of a contempt order is more exacting than under the ordinary abuse-of-discretion standard."  Perez, 347 F.3d at 423; see United States v. Local 1804-1, Int'l Longshoremen's Ass'n, 44 F.3d 1091, 1095 (2d Cir. 1995) ("The contempt power is different.").

14

Given the restricted scope of the contempt power, a prior question is whether the sanction here was actually based on contempt. The bankruptcy court invoked its "authority . . . to impose punitive sanctions on parties who violate court orders," observing that it "may hold a creditor in contempt for that party's violation of an injunction order." Gravel II, 601 B.R. at 903. Then, applying the Supreme Court's recently-articulated standard for contempt in Taggart, the bankruptcy court "impos[ed] punitive sanctions on PHH for its violation of the Debtor Current Orders." Id. at 903; see also id. at 888–89. Moreover, the Trustee's motion was one "for contempt and sanctions." J. App'x 651. The bankruptcy court plainly based its sanction on contempt.

The Trustee argues that we should affirm because a bankruptcy court, in any event, has power to issue "non-contempt-based sanctions." Appellee's Br. at 41. This argument is misplaced. A bankruptcy court's "discretion to award sanctions may be exercised only on the basis of the specific authority invoked by that court." Kalikow, 602 F.3d at 96. We therefore "confine our review to the question of whether the court properly exercised that power" and "do not consider potential alternative sources of authority." In re Sanchez, 941 F.3d 625,

15

626–27 (2d Cir. 2019).  Because the bankruptcy court here relied on its contempt power, our review is limited to whether it abused its discretion in exercising that power.

* * *

A bankruptcy court's contempt power derives from a court injunction and 11 U.S.C. § 105(a).  An injunction is an equitable remedy, and § 105(a) authorizes issuance of any "order" that is "necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  Together, they "bring with them the 'old soil' that has long governed how courts enforce injunctions."  Taggart, 139 S. Ct. at 1801.  That includes the "'potent weapon' of civil contempt."  Id. (quoting Int'l Longshoremen's Ass'n, Local 1291 v. Phila. Marine Trade Ass'n, 389 U.S. 64, 76 (1967)).

Under Taggart, a bankruptcy court may hold a creditor in contempt for violating the court's injunction only "if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct."  Id. at 1799.  The "fair ground of doubt" standard has long been used in this Circuit to determine when a party may be held in contempt in the district court.  See King v. Allied Vision, Ltd., 65

16

F.3d 1051, 1058 (2d Cir. 1995) (quoting Cal. Artificial Stone Paving Co. v. Molitor, 113 U.S. 609, 618 (1885)). The standard derives from two principles that are reemphasized in Taggart: "civil contempt is a severe remedy" and "basic fairness requires that those enjoined receive explicit notice of what conduct is outlawed." 139 S. Ct. at 1802 (cleaned up). In particular, a contempt order is warranted only where the party has notice of the order, the order is clear and unambiguous, and the proof of noncompliance is clear and convincing. King, 65 F.3d at 1058; see U.S. Polo, 789 F.3d at 33.

The Current Orders had two components relevant to the contempt finding. The orders declared that the Gravels and Beaulieus are current on their mortgage payments to PHH, including all charges:

> the debtors, by their payments through the Office of the Chapter 13 Trustee, have made all payments due during the pendency of this case . . . including all monthly payments and any other charges or amounts due under their mortgage with PHH Mortgage Corporation.

The orders also prohibited PHH from contesting that fact in any other proceeding:

17

> the mortgagee [PHH] shall be precluded from disputing that the debtors are current (as set forth herein) in any other proceeding.

J. App'x 705–06, 709. These paragraphs, the bankruptcy court held, gave PHH "notice it was enjoined from seeking to collect any fees or expenses allegedly incurred during the period encompassed by each Order, if not specified in the Order." Gravel II, 601 B.R. at 890. We disagree.

The Current Orders were not a clear and unambiguous prohibition on PHH's sanctioned conduct. To form the basis for contempt, an order must leave "no doubt in the minds of those to whom it was addressed . . . precisely what acts are forbidden." Drywall Tapers & Pointers of Greater N.Y., Local 1974 v. Local 530 of Operative Plasterers & Cement Masons Int'l Ass'n, 889 F.2d 389, 395 (2d Cir. 1989).

The declaration that a debtor is current does not in itself clearly forbid any conduct. Standing alone, it is an inadequate basis for contempt. The very purpose of the civil contempt power is to induce compliance with a court's injunction. Taggart, 139 S. Ct. at 1801. Aside from enjoining acts in other proceedings, there is no injunction here (or similar command or equitable

18

remedy) to enforce--<u>i.e.</u>, the orders fail to describe an "act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C); Fed. R. Bankr. P. 7065; <u>see</u> <u>Steffel v. Thompson</u>, 415 U.S. 452, 471 (1974) ("[N]oncompliance with [a declaratory judgment] may be inappropriate, but is not contempt."). And to imply a restraint where none is stated would violate the principle that a party must have "explicit notice" of what is forbidden or required. <u>Taggart</u>, 139 S. Ct. at 1802.

The Current Orders imposed a single injunction: PHH may not dispute the current status of the debtors "in any other proceeding." J. App'x 706, 709. However broad "other proceeding" may be in this context, there is fair ground of doubt as to whether it would reach PHH's out-of-court conduct in these proceedings.

The Trustee argues that, unless PHH is held in contempt, mortgage creditors will be able to assess improper fees with impunity. These concerns are overwrought. The bankruptcy court could have crafted an order that would have forbidden the conduct troubling the Trustee. The orders in <u>Taggart</u>, for example, relieved the debtor "from all debts that arose before the date of the order for relief" *and* operated "'as an injunction against the commencement or

19

continuation of an action, the employment of process, or an act, to collect, recover or offset' a discharged debt." 139 S. Ct. at 1799, 1801 (quoting 11 U.S.C. §§ 727, 524(a)(2)).

Although a bankruptcy court has "unique expertise in interpreting its own injunctions and determining when they have been violated," In re Anderson, 884 F.3d 382, 390–91 (2d Cir. 2018), this insight does not command deference. Anderson--in recognizing the expertise-- holds that a bankruptcy court is not required to compel arbitration of claims alleging violation of its discharge injunction. Id.; see also MBNA Am. Bank, N.A. v. Hill, 436 F.3d 104, 110 (2d Cir. 2006). But this Court still has a duty to conduct its own "exacting" review of contempt orders. Perez, 347 F.3d at 423. Expertise does not excuse a bankruptcy court from the fundamental limit on its power; a bankruptcy court cannot hold a party in contempt for violating an order that is subject to varying interpretations.

Moreover, the questionable proof of PHH's non-compliance could provide a second ground for vacatur, though we need not rely on it.[1] Because

---

[1] The mortgage statements excluded the fees at issue from the total payment due. The following, for example, is from the Beaulieus' statement:

20

"ambiguities and omissions in orders redound to the benefit of the person

charged with contempt," <u>Gucci Am., Inc. v. Weixing Li</u>, 768 F.3d 122, 143 (2d Cir.

------

Dear Mr. and/or Ms.

Below is the monthly Bankruptcy statement for the above loan.  This statement is provided with the intent of complying with the United States Bankruptcy Court Vermont District Permanent Rule (3071-1).  *This is not an attempt to collect a debt.*

Loan Information:

| | | |
|---|---|---|
| Unpaid Principal balance: | $ | 11,851.98 |
| Escrow Balance: | $ | 3,962.45 |
| Maturity Date: | | 07-18 |
| Interest Rate: | | 5.37500% |
| | | |
| Contractual Due Date: | | 03-01-16 |
| Post-Petition due date: | | 03-01-16 |
| Late Charge Balance to date: | $ | .00 |
| *NSF fees:* | *$* | *30.00* |
| *Property Inspection fees:* | *$* | *56.25* |
| Interest Paid Year to Date: | $ | 485.79 |
| Property Taxes Paid Year to Date: | $ | .00 |

Breakdown of Contractual Monthly Payment:

| | | |
|---|---|---|
| Principal and Interest: | $ | 437.66 |
| Escrow: | $ | 306.74 |
| *Total Payment Due:* | *$* | *744.40* |

J. App'x 675 (emphasis added).

2014), the Current Orders already lack the requisite clarity to hold PHH in contempt.

**D.    The $75,000 Sanction**

The bankruptcy court imposed sanctions on PHH for violation of Bankruptcy Rule 3002.1 amounting to $25,000 in each case for the improperly-noticed fees listed on the mortgage statements. The sanction was calibrated to "the number of incorrect statements PHH sent" as opposed "to the amount of the charges on each incorrect statement," which in total across the three cases did not exceed $716 (and in fact were not even "charges" in any sense: they were not reflected in the balance due). Gravel II, 601 B.R. at 903. Thus, the bankruptcy court imposed a punitive sanction on PHH of $1,000 per statement to deter PHH from further non-compliance.

To impose the sanction, the bankruptcy court invoked Rule 3002.1's authorization to "award other appropriate relief" for violation of the rule. PHH argues that the bankruptcy court erred because "other appropriate relief" does not authorize punitive sanctions.

22

This is an issue of first impression among the circuit courts. And few bankruptcy courts have opined on it. Although one court declined to dismiss a plaintiff's claim for Rule 3002.1 sanctions in an adversary proceeding, In re Bivens, 625 B.R. 843, 850–51 (Bankr. M.D.N.C. 2021), it did not address the issue here. The bankruptcy court in this case is apparently the first and only one to impose punitive monetary sanctions under the rule. The only other court to have weighed in reached the opposite conclusion: that Rule 3002.1 "does not permit [the court] to impose punitive monetary sanctions." In re Tollstrup, No. 15-33924, 2018 WL 1384378, at *5 (Bankr. D. Or. Mar. 16, 2018); see also In re Reynolds, 470 B.R. 138, 144 (Bankr. D. Colo. 2012) (reaching similar conclusion that Rule 3001(c) does not authorize claim disallowance as a sanction). We agree.

\* \* \*

Before Rule 3002.1 was adopted in 2011, mortgage holders would forbear asserting new obligations in the bankruptcy proceedings for fear of violating the automatic stay. The result was that debtors who had completed their chapter 13 plans were discovering that they had incurred new obligations and defaults. See

23

9 Collier on Bankruptcy ¶ 3002.1.RH (16th 2020); Fed. R. Bank. P. 3002.1

Advisory Committee Notes to 2011 Adoption.

As a solution, Rule 3002.1 ensures that debtors are informed of new post-petition obligations (such as fees). The rule requires formal notice to debtors and trustees, and it assures creditors that they will not violate the automatic stay. Debtors then have a chance to pay or contest the new obligations, which prevents lingering deficits from surfacing after the case ends.

The last subdivision of the rule provides an enforcement mechanism. If a creditor fails to give the requisite notice, the bankruptcy court may preclude the creditor from presenting evidence of its claim in the case--unless the failure was substantially justified or harmless. Fed. R. Bankr. P. 3002.1(i)(1). The court may also (or instead) "award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure." Fed. R. Bankr. P. 3002.1(i)(2).

Because "other appropriate relief" is a general phrase amid specific examples, it is best "construed in a fashion that limits the general language to the same class of matters as the things illustrated." Canada Life Assurance Co. v. Converium Ruckversicherung (Deutschland) AG, 335 F.3d 52, 58 (2d Cir. 2003).

24

Reasonable expenses and attorney's fees are compensatory forms of relief. They expressly remedy harms to the debtor "caused by the [creditor's] failure" to give proper notice of a claim. Fed. R. Bankr. P. 3002.1(i)(2). This suggests that "other appropriate relief" is limited to non-punitive sanctions, as that would cabin it to the most general attribute shared with an award of expenses and fees.

The rule's only other sanction reinforces that inference. It prevents a creditor from collecting an un-noticed claim so that a surprise deficiency does not later frustrate the debtor's fresh start. The rule makes an exception for harmless non-compliance, demonstrating that this evidence-preclusion sanction is tied to prejudice that a failure to notice causes the debtor. The sanction thus prospectively serves the remedial goal of shielding the debtor from unforeseen charges, and thus is also not a punishment.

Moreover, other sections of the Bankruptcy Code explicitly authorize punitive damages, whereas Rule 3002.1 is silent. See, e.g., 11 U.S.C. § 362(k)(1) ("[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.").

A broad authorization of punitive sanctions is a poor fit with Rule 3002.1's tailored enforcement mechanism and limited purpose. Punitive sanctions do not fall within the "appropriate relief" authorized by Rule 3002.1.

The bankruptcy court reasoned that Rule 3002.1 authorizes punitive sanctions because merely precluding evidence and awarding attorneys' fees might insufficiently deter misconduct, drawing an analogy to discovery sanctions under Federal Rule of Civil Procedure 37. The dissent likewise argues that Federal Rule 37 and Bankruptcy Rule 3002.1 have an "identical purpose." Dissent at 17. The analogy is unpersuasive.

Discovery sanctions under Federal Rule 37 are deterrents (specific and general) meant to punish a recalcitrant or evasive party. Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976); see Update Art, Inc. v. Modiin Publ'g, Ltd., 843 F.2d 67, 71 (2d Cir. 1988). A party might otherwise abuse or delay discovery, "embroil[ing] trial judges in day-to-day supervision." Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1066 (2d Cir. 1979). "Without adequate sanctions the procedure for discovery would often be ineffectual," and the administration of justice would grind to a

26

halt. C. Wright & A. Miller, 8B Fed. Prac. & Proc. Civ. § 2281 (3d ed.). Federal

Rule 37 protects more than the interest of a party in remedying or avoiding

certain costs; it protects the interests of the parties, the court, and the public in a

speedy and just resolution of the case.

To that end, Federal Rule 37 authorizes a range of sanctions, from mild to

severe. In addition to precluding evidence, a district court may:

> (A)  order payment of reasonable expenses, including
>       attorney's fees, caused by the failure;
>
> (B)  inform the jury of the party's failure; and
>
> (C)  impose other appropriate sanctions, including any
>       of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1). Federal Rule 37(b)(2)(A) authorizes "further just orders"

against a party that disobeys a discovery order, such as dismissal of the action,

default judgment, and contempt of court.

The bankruptcy court cites district court decisions imposing punitive

monetary sanctions on counsel under that "just orders" clause. See, e.g., J. M.

Cleminshaw Co. v. City of Norwich, 93 F.R.D. 338, 355 (D. Conn. 1981); see also

Dissent at 15 (collecting cases). This Court has not decided whether such

27

sanctions are proper.  In any event, Bankruptcy Rule 3002.1 lacks the authorization of "just orders."  More importantly, the rule does not share the aims and functions of Federal Rule 37.  Bankruptcy Rule 3002.1 protects a debtor's interest in fully resolving the debtor's current status as to particular financial obligations; Federal Rule 37 protects "the integrity of our judicial process" with an array of far harsher sanctions.  Update Art, 843 F.2d at 73.

In the alternative, the Trustee argues that the $75,000 sanction is authorized under the bankruptcy court's inherent power.  True, "bankruptcy courts, like Article III courts, possess inherent sanctioning powers," which "include[s] the power to impose relatively minor non-compensatory sanctions on attorneys appearing before the court in appropriate circumstances."  Sanchez, 941 F.3d at 628.  But while the bankruptcy court alluded to its inherent power, it did not assess whether the sanction was authorized under it; we cannot reach this question.  See Kalikow, 602 F.3d at 96 ("[It is] imperative that the court explain its sanctions order with care, specificity, and attention to the sources of its power." (quoting Sakon v. Andreo, 119 F.3d 109, 113 (2d Cir.1997)).  In any event, there is no finding of bad faith; so it is dubious that the bankruptcy court

28

could exercise its inherent power to do that which is unavailable under powers expressly defined. See Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 338 (2d Cir. 1999); see also Chambers v. NASCO, Inc., 501 U.S. 32, 47 (1991). The sanction was imposed under Rule 3002.1(i), and our holding is that the sanction went beyond the relief authorized by that rule.[2]

\* \* \*

The dissent challenges our ruling on Rule 3002.1 and inherent power. If inherent power is alone sufficient to affirm the $75,000 sanction, there would be no reason to consider Rule 3002.1; so I begin there.

The dissent concedes that sanctions may only be imposed based on "specific authority invoked." Dissent at 26 (quoting Kalikow, 602 F.3d at 96).

---

[2] The dissent argues that the bankruptcy court should be "afforded the opportunity to provide additional reasoning" on remand based on the dissent's assumption that the bankruptcy court imposed sanctions under its inherent power and just neglected to give reasons. Dissent at 31. Remand is appropriate when there is an error to fix, a new standard to apply, or, as the dissent emphasizes, further explanation needed of the decision that the court made. Here, the bankruptcy court simply did not exercise its inherent power to sanction PHH. The problem is not that the bankruptcy court's reasoning is too sparse for review. Our role is to review what the bankruptcy court did, not to survey options.

29

But the invocation identified by the dissent is no more than a perfunctory mention. That does not do. A court must justify the sanction in view of the specific source of its authority--especially when the source is inherent power. Inherent power is constrained: it requires "caution" and notice before use; and it is a last resort for when an express authority is not "up to the task." <u>Chambers</u>, 501 U.S. at 50. Although, as the dissent observes, the bankruptcy court analyzed cases on inherent power, it did so to decide what amount it should sanction *under Rule 3002.1.*

In any event, there is still the matter of bad faith. The dissent posits that the bankruptcy court found bad faith, at least more or less. Dissent at 31. When it came to the issue, the bankruptcy court said that PHH's actions "cannot realistically be attributed to an innocent mistake" and raised "serious concerns about whether PHH is making a good faith effort to comply with Rule 3002.1." Dissent at 30 (quoting <u>Gravel I</u>, 556 B.R. at 576 n.10). A concern, even a serious concern, is not a finding. So the dissent characterizes this concern, and associated "findings by the bankruptcy court of PHH's repeated violations," as constituting a finding that PHH's conduct was "tantamount to bad faith."

Dissent at 29–31. But tantamount means of the same weight; it does not mean lesser, and it is not a consolation prize. The dissent transmutes concern into a finding, and would thereby uphold sanctions on a basis that the bankruptcy court did not venture to make.

No wonder the dissent leans heavily on a non-finding to support the $75,000 sanction--PHH never charged the debtors a dime, and never collected a dime. The fees to which no notice was given were never due. The dissent fastidiously avoids acknowledging this little thing: the mortgage statements are said to have been "incorrect"; and they were "showing" fees. Dissent at 5, 7. On the final statements, the fees were $86.25 in the Beaulieu case, $371 in the Knisley case, and $258.75 in the Gravel case. Iterations of the same fees were re-listed on monthly statements in each case, none of them reflected in the amount due, and none of them paid. The rest is hyperventilation. It is surely of some matter there was no damage or harm here.

As for Rule 3002.1, the dissent's challenge proves too little. The dissent argues that the rule's sanction provisions have a deterrence function. Dissent at 17–20. True, but all sanctions deter, including compensatory ones; an award of

31

attorneys' fees, which compensates, simultaneously inflicts pain that is an incentive for compliance. In short, all sanctions "punish." Dissent at 2. The issue is whether the sanction must be calibrated to the prejudice. See Goodyear Tire & Rubber Co. v. Haeger, 137 S. Ct. 1178, 1186 (2017) (distinguishing compensatory from punitive sanctions). With respect to Rule 3002.1(i), the answer is yes.

The dissent is concerned that our interpretation of Rule 3002.1 "will undoubtedly hamper the ability of bankruptcy courts" to deter violations and protect debtors. Dissent at 2. But this concern is at best overwrought. The punitive sanction here is the first and only of its kind that a bankruptcy court has imposed in the over nine years since Rule 3002.1 was adopted. In any event, the majority opinion does not limit a bankruptcy court's inherent power to sanction offenders who act in bad faith. That is just not what the bankruptcy court did here; others might be free to do so if they were to make sufficient findings.

## CONCLUSION

For the foregoing reasons, the order of the bankruptcy court is **VACATED**

and **REVERSED**.

JOSEPH F. BIANCO, *Circuit Judge*, concurring in part and dissenting in part:

I agree with the majority opinion that the Current Orders did not clearly and unambiguously prohibit PHH's conduct for which the bankruptcy court imposed the $225,000 sanction, and that the $225,000 should therefore be vacated. However, I respectfully part company with the majority opinion when it concludes that the bankruptcy court did not have the authority to impose $75,000 in sanctions under Federal Rule of Bankruptcy Procedure 3002.1 (the "Rule"), and that the bankruptcy court did not sufficiently invoke its inherent powers so as to allow this Court to separately review the $75,000 sanction under such powers.

As set forth below, the "other appropriate relief" language in the sanctions authority conferred upon bankruptcy courts under Rule 3002.1(i) provided a proper basis to impose the $75,000 punitive sanction against PHH based upon its flagrant and repeated violations of the Rule (as found by the bankruptcy court). Such an interpretation of the Rule is not only consistent with the plain text of the Rule itself but is further supported by the purpose of the Rule and the fact that the Rule was modeled after Rule 37 of the Federal Rules of Civil Procedure, which allows for similar punitive sanctions. In holding otherwise in the face of the broad language and purpose of the sanctions provision, the majority renders a

1

bankruptcy court powerless to levy *any sanction* under the Rule against a serial violator of the Rule's provisions over a substantial period of time where those violations (due to the diligence of the Trustee in identifying and rectifying the violations) did not result in any actual economic harm to the multiple debtors who were the victims of the Rule violations. In other words, in this case the majority concludes that the sanctions provision of the Rule does not allow the bankruptcy court to punish the misconduct of one of the largest subservicers of residential mortgages in the United States, even where a prior sanction was ineffective at achieving compliance. This interpretation will undoubtedly hamper the ability of bankruptcy courts, through their enforcement of this Rule, to provide deterrence and to protect debtors from predatory practices that interfere with the "fresh start" for debtors that is a fundamental purpose of bankruptcy protection under Chapter 13.

I also separately conclude that, even assuming *arguendo* such authority does not exist under the Rule itself, the bankruptcy court possessed the independent authority under its inherent powers to impose this $75,000 sanction against PHH for its egregious conduct in violation of the Rule. The majority holds that the bankruptcy court, in imposing sanctions for this misconduct, only "alluded" to its

2

inherent powers and did not provide sufficient reasoning to allow this Court to analyze the potential application of that power to the facts here. I respectfully disagree.

The bankruptcy court's explicit invocation of its inherent powers in both its order and its separate opinion, as well as its detailed reasoning regarding PHH's violations of the Rule and its thorough analysis of the "inherent powers" case authority relating to the sanction amount, together provided a more than sufficient record for us to hold that the imposition of the $75,000 sanction under such inherent powers was not an abuse of discretion. Moreover, although the majority suggests that it is "dubious" that a bankruptcy court can invoke its inherent powers in the absence of an explicit finding of bad faith, the Supreme Court and this Court have made clear that conduct that is "tantamount to bad faith" can provide the requisite factual predicate for imposing sanctions under a court's inherent powers, and I conclude that the bankruptcy court's findings satisfied that standard. This precedent regarding a district court's inherent powers to sanction in such situations applies with equal force to a bankruptcy court, which likewise has a correspondingly clear and compelling need to use such powers to vindicate its authority and ensure basic compliance with its rules and procedures.

3

In sum, I conclude that the bankruptcy court had the authority under Rule 3002.1(i), as well as its inherent powers, to sanction PHH for its repeated violations of the Rule, and did not abuse its discretion in setting the amount at $75,000 given the nature and scope of the violations by this multi-billion dollar company and the bankruptcy court's prior warning and sanction, as well as PHH's violation of its own commitment to rectify whatever lack of internal controls were causing these repeated violations.

I therefore join in the opinion of the majority, except with respect to Part D.

## DISCUSSION

### A. The Bankruptcy Court's Finding Regarding PHH's Pattern of Sanctionable Misconduct

Before reviewing the bankruptcy court's authority to impose sanctions for violations of Rule 3002.1 and the framework for exercising its discretion in determining the amount of such sanctions, it is necessary to briefly summarize the nature of PHH's repeated violations of the Rule, as found by the bankruptcy court (whose findings as to these violations are not disputed on appeal). This summary of the factual findings highlights that PHH's pattern of violations is precisely the type of conduct that the rule-makers sought to prevent, through the enactment of

4

the Rule and the accompanying sanctions provision that gives a bankruptcy court the ability to enforce the Rule and deter such conduct.

In this action, PHH sent the Gravels incorrect mortgage statements for two-and-one-half years from 2011 until 2014. In order to attempt to correct the misapplication of payments, the Trustee mailed multiple letters attaching detailed spreadsheets directly to PHH, in addition to filing the letters with the bankruptcy court so they would be sent to PHH's counsel via ECF. Receiving no response from PHH, the Trustee filed a motion for sanctions in the amount of a little over $12,000. Only in response to that motion did PHH acknowledge its error and indicate that it had implemented new remedial processes to prevent future accounting errors. At oral argument on that motion, PHH's counsel acknowledged to the bankruptcy court that it "obviously has the authority to offer sanctions." Joint App'x at 734. However, PHH's counsel averred that the sanctions motion had successfully brought this accounting problem to PHH's attention, and asked that the amount of any monetary sanctions be modest in light of PHH's response. In particular, PHH's counsel told the bankruptcy court that PHH had "taken remedial steps" and had "corrected the underlying problem." *Id.* at 724. PHH's counsel further explained, "[i]f [PHH has] problems again, they are

not going to have – they are not going to have that excuse. They are not going to have that defense." *Id.* Although the bankruptcy court expressed concerns about whether using progressive sanctions would curb the misconduct in a timely fashion, the bankruptcy court ultimately agreed to the amount of $9,000, which had been negotiated by PHH's counsel and the Trustee.

At least one other bankruptcy court had similarly warned PHH about its violation of Rule 3002.1. Specifically, in *In re Owens*, No. 12-40716, 2014 WL 184781 (Bankr. W.D.N.C. Jan. 15, 2014), a bankruptcy court found that PHH violated Rule 3002.1(c) when it sent debtors statements including post-petition fees that were more than 180 days old, without filing or serving the required Rule 3002.1(c) notice. The bankruptcy court specifically held that PHH must comply with Rule 3002.1(c), regardless of whether it actually intended to recover the fees. *Id.* at *4. The *Owens* court declined to sanction PHH under 3002.1(i) because the decision was rendered so soon after the Rule's effective date. *Id.* However, in that decision, the bankruptcy court unequivocally cautioned PHH that it "[might] consider awarding relief as against PHH under Rule 3002.1(i) should [the issue] come up in the future." *Id.*

Notwithstanding the prior sanction and warnings by bankruptcy courts about these violations, PHH's violations continued. More specifically, after orders were issued in the *Gravel* and *Beaulieu* actions, each of which attested that "the debtors have cured any mortgage arrearage or default" and were "current," Joint App'x at 705–06, 709, PHH sent twenty-five mortgage statements showing late charges and property inspection fees in both actions. PHH did the same in the *Knisley* action. Again, the Trustee filed motions for contempt and sanctions (this time in each action), and again, PHH waived the fees and removed them from the debtors' accounts. Only this time, in the exact reverse of its prior stance, PHH argued that motion practice was unnecessary, and that it would have happily removed the fees if the Trustee had only contacted PHH advising PHH of its error.

Among other sanctions, the bankruptcy court assessed a $1,000 sanction per violation of Rule 3002.1, for a total of $75,000 across all three actions, against PHH under Rule 3002.1(i) and its inherent powers.

## B. Sanctions Under Federal Rule of Bankruptcy Procedure 3002.1(i)

I respectfully dissent from the majority's conclusion that Rule 3002.1 does not provide a bankruptcy court with the authority to impose sanctions. The plain meaning of the Rule, as bolstered by its purpose and a review of analogous rules,

7

supports the bankruptcy court's conclusion that Rule 3002.1(i)'s enforcement measures for violations of Rule 3002.1(c) include punitive monetary sanctions.

At the start, in support of its conclusion, the majority cites to a bankruptcy case, in which the bankruptcy court determined that it lacked the power to impose punitive sanctions under Rule 3002.1. *See In re Tollstrup*, No. 15-33924, 2018 WL 1384378, at *5 (Bankr. D. Or. Mar. 16, 2018). However, it also should be noted that other bankruptcy courts have reached a contrary conclusion. For example, a bankruptcy court recently allowed a claim for punitive sanctions under Rule 3002.1(i) to survive a motion to dismiss. *See In re Bivens*, 625 B.R. 843, 850–51 (Bankr. M.D.N.C. 2021); *see also In re Owens*, 2014 WL 184781, at *4 (warning PHH that the bankruptcy court would consider imposing sanctions under Rule 3002.1(i) if there were future violations). Thus, not only has no circuit court addressed this issue, but bankruptcy courts themselves are not in agreement.

"[T]he starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof." *Ret. Bd. of the Policemen's Annuity and Benefit Fund of the City of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 165 (2d Cir. 2014) (alteration in original) (internal quotation marks omitted). As set forth by the majority, Rule 3002.1(i) provides that:

> the court may, after notice and hearing, take either or both of the following actions: (1) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or (2) award *other appropriate relief*, *including* reasonable expenses and attorney's fees caused by the failure.

Fed. R. Bankr. P. 3002.1(i) (emphasis added).

The Bankruptcy Code instructs that "'includes' and 'including' are not limiting[.]" 11 U.S.C. § 102(3). In essence, the Rule should be interpreted to mean "including, but not limited to," when enunciating the list of possible other relief that is available to the bankruptcy court. Therefore, the text is intended to be expansive: "[R]easonable expenses and attorney's fees" are but two possible types of "appropriate relief" within this sanctions provision. Fed. R. Bankr. P. 3002.1(i).

Notwithstanding this expansive language, the majority limits the Rule to allowing only non-punitive sanctions because, in its view, "reasonable expenses and attorney's fees" are both forms of compensatory relief and, when a statute provides specific examples, it is best to limit the general language to the same type of matters as those illustrated. Maj. Op. at 24–25 (quoting *Canada Life Assurance Co. v. Converium Ruckversicherung (Deutschland) AG*, 335 F.3d 52, 58 (2d Cir. 2003)). The use of that canon of construction, however, does not withstand closer scrutiny

9

when the phrase "other appropriate relief" is analyzed in the context of this particular sanctions provision.

As a threshold matter, one should not overlook the fact that Rule 3002.1(i) does not purport to be a subsection that focuses on compensatory relief. It is, at its core, a sanctions provision. In fact, as one bankruptcy court has articulated, "[i]n case the importance of complying with Rule 3002.1(c) is for some reason lost on a lender, Rule 3002.1(i) serves as a sobering reminder. It authorizes the court to punish the offending lender." *In re Lescinskas*, 628 B.R. 377, 382 (Bankr. D. Mass. 2021) (noting that the advisory committee notes to the 2011 adoption of the Rule described "subdivision (i) penalties as 'sanctions'"). Thus, this is not a situation where a bankruptcy court chose to impose punitive monetary sanctions under a provision that had nothing to do with sanctions.

The majority nevertheless seeks to cabin the bankruptcy court's authority to impose punitive sanctions under the broad phrase "other appropriate relief," *within this sanctions provision*, by asserting that the other enumerated sanctions under both Rule 3002.1(i)(1) and (2) are non-punitive (or compensatory) forms of sanctions. I respectfully disagree with that analysis. In particular, I do not accept the majority's classification of Rule 3002.1(i)(1) – namely, the evidence-preclusion

10

provision – as a non-punitive sanction. Although it does allow the violator to avoid the sanction if the failure to provide the requisite notice was harmless, it also allows for the imposition of the drastic sanction of exclusion regardless of the precise nature or amount of such harm. In other words, the sanction is not required to be proportionate to the harm – *i.e.*, compensatory in nature – but rather seeks to punish with the broad brush of evidence-preclusion to deter such violations in the future. Indeed, we have noted that in other contexts the preclusion of evidence can be a *more extreme* sanction than monetary sanctions. *See Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979) (Rule 37 "provides a spectrum of sanctions. The mildest is an order to reimburse the opposing party for expenses caused by the failure to cooperate. More stringent are orders . . . prohibiting the introduction of evidence . . . . Preclusionary orders ensure that a party will not be able to profit from its own failure to comply. . . . [C]ourts are free to consider the general deterrent effect their orders may have on the instant case and on other litigation, provided that the party on whom they are imposed is, in some sense, at fault." (footnote and citations omitted)).

In fact, in the context of the evidence-exclusion sanction under Rule 37, we have explained the importance of the punitive nature of such a sanction as a deterrent to future violations. *See Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365–67 (2d Cir. 1991) (discussing the district court's discretion to preclude evidence under Rule 37 and explaining that "[a]lthough an order granting a claim and precluding a party from presenting evidence in opposition to it is strong medicine, such orders are necessary on appropriate occasion to enforce compliance with the discovery rules and maintain a credible deterrent to potential violators"); *see also Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976) (explaining Rule 37 sanctions must be applied diligently both "to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent").

Once the evidence-preclusion penalty in Rule 3002.1(i)(1) is properly classified as a potentially punitive sanction that also operates as a deterrent, then the "other appropriate relief" language in Rule 3002.1(i)(2) naturally includes, from a textual standpoint, punitive monetary sanctions because they are part of "the same class of matters" contained within the related penalty provision. *Canada Life Assurance Co.*, 335 F.3d at 58.

This interpretation of the plain text of Rule 3002.1 to allow for punitive, non-compensatory sanctions is consistent with the Rule's purpose, as well as its origin and its amendment. As noted above, Rule 3002.1 was based on Federal Rule of Civil Procedure 37(c)(1).[1] This is also true of Federal Rule of Bankruptcy Procedure 3001(c)(2)(D), which is a companion rule to Rule 3002.1 and likewise addresses the failure of a holder of a claim to provide required information as part of a proof of claim and contains an identically-worded sanctions provision.[2] *See*

---

[1] Rule 37(c)(1) states:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the *reasonable expenses, including attorney's fees*, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose *other appropriate sanctions, including* any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1) (emphases added).

[2] Rule 3001(c) states:

13

Advisory Comm. on Bankr. Rules, Subcomm. on Consumer Issues, Memorandum on Comments on Proposed Amendments to Rule 3001(c) and Proposed New Rule 3002.1, 12 (PDF page 63) (Apr. 7, 2010) ("The proposed sanctions [in Rule 3001(c)(2)(D)] most closely resemble the sanction available under Civil Rule 37(c)(1) for the failure to provide information required under the disclosure provisions of Rule 26(a)."), https://www.uscourts.gov/sites/default/files/fr_import/BK2010-04.pdf.

As the bankruptcy court noted below, district courts have concluded that the similar language of Rule 37 allows for the imposition of punitive, non-compensatory sanctions for violation of the discovery rules. *In re Gravel* ("*Gravel II*"), 601 B.R. 873, 886 (Bankr. D. Vt. 2019) (collecting cases). Although we have

---

If the holder of a claim fails to provide any information required by this subdivision (c), the court may, after notice and hearing, take either or both of the following actions:

(i) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or

(ii) *award other appropriate relief, including reasonable expenses and attorney's fees* caused by the failure.

Fed. R. Bankr. P. 3001(c)(2)(D) (emphasis added).

never decided this issue, I agree with the overwhelming majority of courts that have concluded such authority exists under Rule 37. *See, e.g., Olivarez v. GEO Grp., Inc.*, 844 F.3d 200, 203 (5th Cir. 2016) ("Pursuant to Rule 37[(c)(1)] and the court's inherent authority, the district court imposed sanctions requiring each Appellant to pay a $1,000 fine."); *see also Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08–CV–5023 (CBA)(RLM), 2010 WL 3173785, at *3, 11 (E.D.N.Y. Aug. 11, 2010) (imposing a non-compensatory fine of $25,000 and stating "[a] court may . . . levy monetary sanctions against a violating party in lieu of or *in addition to* the sanctions outlined in Rule 37(b)(2)(A)." (emphasis added)); *Danis v. USN Commc'ns, Inc.*, No. 98 C 7482, 2000 WL 1694325, at *51 (N.D. Ill. Oct. 23, 2000) (ordering the defendant to pay $10,000 fine under Rule 37(b)(2) and noting that, "[w]hile the imposition of a fine is not one of the sanctions specifically enumerated in Rule 37(b)(2), the language of Rule 37(b)(2) makes it clear that the enumerated sanctions are 'among others' that a Court may enter, and that they are therefore not intended to be exclusive"); *Winters v. Textron, Inc.*, 187 F.R.D. 518, 521–22 (M.D. Pa. 1999) (defendant ordered to pay $10,000 fine); *Miltope Corp. v. Hartford Cas. Ins. Co.*, 163 F.R.D. 191, 195 (S.D.N.Y. 1995) (plaintiff fined $1,000); *see generally* 8B Charles Alan

Wright et al., Federal Practice and Procedure § 2284 (3d ed. 2021) (sanctions enumerated in Rule 37 are not intended to be exclusive).

The majority nevertheless concludes that Rule 37 (and a lower court's use of that Rule to impose non-compensatory punitive sanctions) does not provide helpful guidance as to the intended scope of Bankruptcy Rule 3002.1 and, by extension, Rule 3001(c). In particular, in distinguishing these non-compensatory sanctions under Rule 37, the majority notes that "Rule 3002.1 lacks the authorization of 'just' orders" like that contained in Rule 37. Maj. Op. at 28 (quoting Fed. R. Civ. P. 37 (b)(2)(A)). However, the "just orders" clause, similar to the "other appropriate relief" catch-all provision at issue here, does not enumerate punitive monetary sanctions among its list of illustrative sanctions. In order to ensure compliance, both provisions use similar language to cloak the court with the flexibility and discretion to impose unenumerated punitive sanctions, regardless of whether such additional sanctions are characterized as "just orders" under Rule 37 or "other appropriate relief" under Rule 3002.1.

The majority also seeks to cast aside the analogous Rule 37 language and framework because unlike the "tailored enforcement mechanism" of Rule 3002.1, "[d]iscovery sanctions under Federal Rule 37 are deterrents (specific and general)

16

meant to punish a recalcitrant or evasive party" and "Federal Rule 37 protects more than the interest of a party in remedying or avoiding certain costs; it protects the interests of the parties, the court, and the public in a speedy and just resolution of the case." Maj. Op. at 26–27.

However, I find no daylight between the deterrent purpose of the sanctions provisions in Bankruptcy Rules 3002.1 and 3001(c) and the identical purpose of Rule 37, upon whose language they were modeled. Prior to the adoption of Rule 3002.1, "mortgage companies applied fees and costs to a debtor's mortgage while the debtor was in bankruptcy without giving notice to the debtor and then, based on these post-petition defaults, sought to foreclose upon the debtor's property after the debtor completed the plan." *In re Tollios*, 491 B.R. 886, 888 (Bankr. N.D. Ill. 2013). In response to that problematic practice, and after the financial crisis, Rule 3002.1 was adopted in December 2011 to ensure that both debtor and trustee were informed of the exact amount needed to cure any pre-petition arrearage and were furnished with notice of any changes in post-petition obligations. *See* Fed. R. Bankr. P. 3002.1 advisory committee notes to the 2011 adoption.

Importantly, the evidentiary exclusion was already in Rule 3001 before the adoption of Rules 3001(c) and 3002.1, which now provide additional sanctions,

17

including "other appropriate relief." As the bankruptcy court explained, this broadening of the available sanctions was a recognition that, in practice, "[t]here are many instances in which the evidentiary exclusion remedy provides little, if any, relief in the context of Rule 3001(c) and Rule 3002.1 sanctions motions." *Gravel II*, 601 B.R. at 885–86 (collecting cases). Additionally, another court has explained that "there can be no proceeding in which the evidentiary penalty of Rule 3001(c)(2)(D) could come into play" because "the chapter 13 plan has been fully administered." *In re Davenport*, 544 B.R. 245, 250 (Bankr. D.D.C. 2015); *see also In re Reynolds*, No. 11-30984, 2012 WL 3133489, at *3 (Bankr. D. Colo. July 31, 2012) ("At a hearing where the merits of a claim are not at issue, the penalty set out in Rule 3001(c)(2)(D) is meaningless because it only comes [into] play at a hearing on the merits of a claim where a court would otherwise entertain the type of evidence required by Rule 3001(c)(1).").

Thus, there is no doubt that the expansion of the sanctions, to include "other appropriate relief," was an effort to bring greater compliance under this Rule in the industry through the deterrence that such additional punitive sanctions would bring. *Cf.* Advisory Comm. on Bankr. Rules, Subcomm. on Consumer Issues, Memorandum on Comments on Proposed Amendments to Rule 3001(c) and

Proposed New Rule 3002.1, 12 (PDF page 63) (Apr. 7, 2010) ("The proposed addition of Rule 3001(c)(2)(D) was based on the Advisory Committee's belief that stronger sanctions are required to ensure greater compliance with the rule's requirements."), https://www.uscourts.gov/sites/default/files/fr_import/BK2010-04.pdf.

Bankruptcy courts have highlighted the importance of using these sanctions to achieve greater deterrence and, therefore, greater compliance under Rule 3002.1. *See In re Lescinskas*, 628 B.R. at 382, n.8 ("The gravity of Rule 3002.1 compliance was recently underscored by a series of multimillion dollar penalties negotiated by the Department of Justice's U.S. Trustee Program with certain national banks which the USTP had accused of, among other things, repeatedly violating Rule 3002.1."). For instance, in *Lescinskas*, the bankruptcy court disallowed *the bank's* contractual claim for attorney's fees and costs under Rule 3002.1(i)(2) even though such a sanction was punitive rather than compensatory and would result in a windfall for the debtor. *See id*. at 384 ("A legitimate purpose of a sanction is to punish. It is not uncommon for the beneficiary of that punishment to be the opposing party who thereby receives a windfall.").

Given the broad language utilized and the clear intent to strengthen these sanctions to allow for additional deterrence, there is no basis to conclude that there was any intent to limit "other appropriate relief" to compensatory sanctions such as "reasonable expenses and attorney's fees," and to exclude non-compensatory punitive sanctions. For the same reason that the evidence exclusion sanction was insufficient to foster deterrence, such a restriction on the "other appropriate relief" would frustrate the provision's deterrent purpose especially because, as the bankruptcy court also emphasized, "[t]here are also many instances in which awarding attorney's fees and costs may prove insufficient 'to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Gravel II*, 601 B.R. at 886 (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)).

In addition to the shared purpose of deterrence, the scope of the intended sanctions under Rule 3002.1 cannot be distinguished from those under Rule 37 based upon the other interests that each rule is designed to protect. Thus, I respectfully disagree with the majority's view that Rule 3002.1 only protects the debtor in "remedying or avoiding certain costs," while Federal Rule 37 "protects the interests of the parties, the court, and the public in a speedy and just resolution of the case." Maj. Op. at 27. To be sure, as noted above, Rule 3002.1 seeks to ensure

20

that the debtor avoids certain undisclosed costs.  However, more fundamentally, its objective is to broadly protect Chapter 13 debtors' opportunity for a "fresh start," which is one of the "twin pillars of the bankruptcy system." *In re Sanchez*, 372 B.R. 289, 321 (Bankr. S.D. Tex. 2007); *see also In re Rivera*, 599 B.R. 335, 342 (Bankr. D. Ariz. 2019) ("[Rule 3002.1] is a procedural mechanism designed to effectuate the Chapter 13 policy of providing debtors with a fresh start." (internal quotation marks omitted)).  The reimbursement of costs to a debtor for a Rule violation (where such costs are incurred) does little to prevent future violations and therefore falls far short of safeguarding the Chapter 13 "fresh start" process for all such debtors. *See generally In re Lescinskas*, 628 B.R. at 384 ("Contrary to the bank's suggestion, putting a debtor in the difficult position of having to seek to amend his plan to amortize post-petition fees and charges (something a debtor cannot even force a lender to accept) is not an acceptable alternative to the lender's complying with Rule 3002.1(c) in the first instance.").

One of the primary reasons that the award of costs and attorney's fees may provide woefully insufficient deterrence is that debtors may often pay the fees and charges that violate the Rule, either because they go unnoticed to the debtor or because it is easier to pay the small fees/charges rather than to litigate them, and

21

such decisions by the debtor expose the offending party to no sanction whatsoever.

The *amicus* brief from the National Association of Chapter 13 Trustees explained

this economic incentive for non-compliance with the Rule by mortgage servicers:

> [PHH] waves off its errors, in part, by emphasizing the relatively small dollar amount at issue in these cases. But that misses the systemic point. These types of undisclosed fees are at the heart of the problem that Rule 3002.1 attempts to address. When fees and charges creep into accounts without proper notice, debtors may pay them, even if invalid. That may be because the fees and charges are not designated as immediately collectible and simply inflate the amounts debtors must pay to satisfy the loans. Or it may be because debtors conclude that the burden of challenging the amounts exceeds the likely benefit – especially if they learn of the exaggerated payoff only when they are attempting to close a refinancing of the loan or a sale of the mortgaged property. If the only cost to a claimholder for improperly assessing fees is to occasionally forego the (relatively small) fees when caught, it encourages servicers to just treat those forfeitures as a cost of doing business and never take the systemic measures required to service loans properly in Chapter 13.

Nat'l Assoc. of Chapter 13 Trs. Amicus Br. at 5–6 (citation omitted); *see also id*. at

15 ("[A]s bad as the headline-grabbing cases are, the real story is in the systemic

errors that impose relatively small costs on a wide range of consumers. These

errors are at least as pernicious because of the ease with which they can escape

notice and because of the practical obstacles to obtaining individual relief."). The

majority nevertheless asserts that, when the improper fees are contained on the

monthly statements but not part of the amount due and ultimately did not get paid

22

(as is the case here), "[t]he rest is hyperventilation." Maj. Op. at 31. I do not view these serious concerns about systemic non-compliance by some mortgage servicers with the Rule and the Rule's inability to adequately address serial violations through compensatory sanctions, which were articulated by the *amicus* and recognized by a bankruptcy court with real-world expertise in the enforcement of this Rule, as "hyperventilation."

In short, beyond any interest that a particular debtor may have in the enforcement of the Rule, the bankruptcy courts and the public have an equally important and independent interest in ensuring that the "fresh start" objective of Chapter 13 proceedings is not undermined, and that a speedy and just resolution of those proceedings takes place. *See In re Sutherland*, 161 B.R. 657, 661 (Bankr. E.D. Ark. 1993) ("The longer the process to confirmation [under Chapter 13], the greater the harm to the creditors and the increase in adequate protection issues and problems for the creditors, the debtor, and the Court."); *see also In re Carr*, 468 B.R. 806, 808 (Bankr. E.D. Va. 2012) ("The purpose of Rule 3002.1 was to provide a prompt, efficient, and cost-effective means to determine whether there is a question as to the status of a debtor's home loan at the conclusion of the [C]hapter

23

13 case."); *Lucoski v. I.R.S.*, 126 B.R. 332, 342 (S.D. Ind. 1991) (noting that "speedy resolution of Chapter 13 proceedings are favored").

Thus, the judicial branch and the public have a compelling interest in ensuring that the bankruptcy process is not abused by Rule violations or other misconduct. In fact, it is the role of the Trustee to represent the public interest with regard to the enforcement of the bankruptcy rules, including Rule 3002.1. *See generally In re Zarnel*, 619 F.3d 156, 162 (2d Cir. 2010) (quoting other cases for the proposition that "the U.S. trustees are responsible for protecting the public interest and ensuring that bankruptcy cases are conducted according to law" and "avoiding substantial abuse of the bankruptcy process" (internal quotation marks omitted)).

In sum, I conclude that the plain meaning of "other appropriate relief" under Rule 3002.1, as confirmed by its modeling after both Rule 37 and that Rule's purpose, authorizes a bankruptcy court to use its discretion to impose punitive monetary sanctions in appropriate circumstances for violations of Rule 3002.1.

## C. Sanctions Under a Bankruptcy Court's Inherent Power

Even assuming, *arguendo*, that the bankruptcy court did not have the authority to impose punitive monetary sanctions against PHH under Rule 3002.1,

24

the bankruptcy court certainly possessed the authority and discretion to impose the $75,000 in sanctions for PHH's Rule violations under its inherent powers.

As the majority correctly explains, it is well settled that "'[b]ankruptcy courts, like Article III courts, possess inherent sanctioning powers,' which 'include[s] the power to impose relatively minor non-compensatory sanctions on attorneys appearing before the court in appropriate circumstances.'" Maj. Op. at 28 (second alteration in original) (quoting *In re Sanchez*, 941 F.3d 625, 628 (2d Cir. 2019)). That inherent power can be exercised to address violations of rules, even where rules contain a sanctions provision. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) (explaining that if "neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power"); *see also DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998) ("[T]he fact that there may be a statute or rule which provides a mechanism for imposing sanctions of a particular variety for a specific type of abuse does not limit a court's inherent power to fashion sanctions, even in situations similar or identical to those contemplated by the statute or rule.").

Notwithstanding its recognition of this inherent power possessed by the bankruptcy court, the majority concludes that the bankruptcy court here only

25

"alluded to its inherent powers" and that "[t]he sanction was imposed under Rule 3002.1(i)." Maj. Op. at 28–29. To be sure, an award of sanctions "may be exercised only on the basis of the specific authority invoked by that court." *In re Kalikow*, 602 F.3d 82, 96 (2d Cir. 2010). However, the bankruptcy court did more than "allude[] to its inherent powers" – it explicitly invoked such powers. More specifically, in both its opinion and its separate order, the bankruptcy court stated that it "finds, first, it has the authority pursuant to Rule 3002.1, pertinent caselaw, and *its inherent powers*, to impose punitive sanctions on PHH for its violations of Rule 3002.1." *Gravel II*, 601 B.R. at 878 (emphasis added); *see also id.* at 912. Thus, it is abundantly clear from the record that the bankruptcy court's inherent powers were invoked and that the sanctions were imposed pursuant to such powers (in addition to under the Rule). In fact, counsel for PHH even corrected the Court at oral argument to make clear that the bankruptcy court imposed the sanctions under its Rule 3002.1 and its inherent powers in its second order. *See* Oral Arg. at 8:15–28.

I also respectfully disagree with the majority's conclusion that the bankruptcy court did not sufficiently assess whether the sanction was authorized so as to allow this Court to reach the question. Although the bankruptcy court did

26

not include a section in the opinion separately discussing its basis for invoking its inherent authority to impose the $75,000 in sanctions for PHH's violations of Rule 3002.1, no such separate analysis was necessary because its factual basis for invoking its inherent powers was exactly the same as its basis for imposing such sanctions under Rule 3002.1, as to which there already was a lengthy and thorough analysis.

Moreover, the bankruptcy court spent several pages of its decision analyzing multiple inherent powers cases in great detail in discussing and determining the potential amount of the sanctions to be imposed under the court's inherent powers. *See Gravel II*, 601 B.R. at 905–07. Thus, this is not a case where the bankruptcy court failed to show "care, specificity, and attention to the sources of its power," *In re Kalikow*, 602 F.3d at 96 (quoting *Sakon v. Andreo*, 119 F.3d 109, 113 (2d Cir. 1997)); *cf. Sakon*, 119 F.3d at 113 ("[A]n award [of sanctions] either without reference to any statute, rule, decision, or other authority, or with reference only to a source that is inapplicable will rarely be upheld.").

Indeed, it is hard to imagine (and the majority fails to articulate) what additional factual or legal reasoning would be needed to aid our review of this determination under the bankruptcy court's inherent powers. Interestingly, PHH

27

has not even argued that the bankruptcy court's reasoning with respect to its inherent powers was deficient. Instead, when asked at oral argument about the imposition of the $75,000 in sanctions under its inherent authority, PHH's counsel simply stated, "with respect to the $75,000 part of the case, . . . [the Trustee] has a stronger argument there." Oral Arg. at 5:17–33. In short, I conclude that the bankruptcy court's decision – including its explicit invocation of its inherent powers, its detailed findings with respect to PHH's violations of Rule 3002.1, and its thorough explanation as to how it arrived at the particular amount of the sanctions under the applicable case authority for making such a determination under its inherent powers – provided a more than sufficient record for this Court to analyze and conclude that the bankruptcy court did not abuse its discretion in imposing such sanctions.

As to the requirements for the exercise of that authority and discretion under a bankruptcy court's inherent powers, although the majority suggests that it is "dubious" that a bankruptcy court can impose monetary sanctions without an explicit finding of bad faith, the Supreme Court has made clear that monetary sanctions imposed under a court's inherent powers require a finding that the misconduct "constituted or was *tantamount to bad faith*." *Roadway Express, Inc.*, 447

28

U.S. at 767 (emphasis added). As to the nature of conduct that can be "tantamount to bad faith," we have explained that "a federal court – any federal court – may exercise its inherent power to sanction a party . . . who has acted in bad faith, *vexatiously, wantonly, or for oppressive reasons*." *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) (emphasis added) (internal quotation marks omitted).

Therefore, although courts often make an explicit finding of bad faith on behalf of a party before imposing sanctions, *see Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 368 (2d Cir. 2021), a court may impose a monetary sanction on a party (or an attorney) under its inherent power if the factual findings supporting the sanctions are tantamount to bad faith, *see, e.g.*, *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 520–21 (6th Cir. 2002) (concluding that, although the district court's finding that the plaintiff's conduct was "laced with bad faith" was an explicit finding of bad faith, "the district court's other findings [that] Plaintiff's litigation conduct [was] 'tantamount' to bad faith provid[ed] more than ample grounds to justify the exercise of its inherent authority and to impose the sanction of attorney fees and costs").

Here, the bankruptcy court observed, in its initial opinion imposing the sanctions, that:

29

> [w]hile there is no requirement to make a bad faith finding, *PHH's conduct cannot realistically be attributed to an innocent mistake.* PHH *had knowledge* of [its obligations] . . . , only corrected the statements after the Trustee filed a motion for sanctions, and then asserted it did not violate a court order at all. Taken together, particularly in the context of prior court warnings, these actions raise serious concerns about *whether PHH is making a good faith effort to comply with Rule 3002.1* and heed the directives of court orders declaring debtors current.

*In re Gravel* ("*Gravel I*"), 556 B.R. 561, 576 n.10 (Bankr. D. Vt. 2016) (emphases added), *vacated and remanded by PHH Mortg. Corp. v. Sensenich*, Case No. 5:16–cv–00256–gwc, 2017 WL 6999820 (D. Vt. Dec. 18, 2017). In addition to this finding in the initial opinion that PHH's conduct was not "an innocent mistake," the bankruptcy court reiterated in its second opinion (re-imposing the sanctions) that it had found that "PHH had engaged in a pattern of the offending conduct" and "PHH had previously been admonished twice and sanctioned once (in this Court) for sending incorrect statements." *Gravel II*, 601 B.R. at 882; *see also id.* at 896, 903 (emphasizing "PHH's status as a repeat offender" and "the gravity of [PHH's] misconduct").

Simply put, the record is replete with findings by the bankruptcy court of PHH's repeated violations of the Rule despite having the wherewithal to know better and its assurances to the bankruptcy court that it would amend its processes

30

to comply with its obligations.  In my view, that record is more than sufficient to constitute the finding, which was necessary to support monetary sanctions under the bankruptcy court's inherent powers, that PHH's conduct was "tantamount to bad faith." *Roadway Express, Inc.*, 447 U.S. at 767; *see also Matter of Betts*, Nos. 94–2018, 94–2668, 1995 WL 108940, at *2 (7th Cir. 1995) (imposing sanction on an attorney pursuant to a bankruptcy court's inherent powers based on "egregious misconduct"); *In re AOV Indus., Inc.*, 798 F.2d 491, 498 (D.C. Cir. 1986) (noting the litigant "was on clear notice of what action was expected of him in the district court: the Bankruptcy Rules, the district judge, and the motion for fees made it crystal clear" what action the litigant must take, and sanctions were appropriate because he did not do so).

In any event, even if the bankruptcy court's reasoning for the imposition of sanctions under its inherent powers (including on the issue of bad faith) was not sufficiently developed to allow review by this Court (as the majority finds), we should remand the matter, and the bankruptcy court should be afforded the opportunity to provide additional reasoning for its determination.  *See, e.g.*, *Hollon v. Merck & Co.*, 589 F. App'x 570, 572 (2d Cir. 2014) (remanding where the district court did not provide sufficient reasoning to allow appellate review on the issue

31

of bad faith for the imposition of sanctions under the court's inherent powers); *Weaver v. Chrysler Corp.*, 14 F. App'x 136, 137 (2d Cir. 2001) (holding that findings for imposition of sanctions were insufficient and "retain[ing] jurisdiction over th[e] appeal while vacating the order and remanding to the district court for additional findings and reasoning as appropriate"), *order rescinded*, 99 F. App'x 330, 333 (2d Cir. 2004) (affirming district court's imposition of sanctions after it issued a supplemental order "in light of [its] additional findings and articulated reasoning"). Here, the bankruptcy court is not being afforded such an opportunity to supplement the record on remand.

In short, I conclude that the record is sufficient to allow this Court to determine that the bankruptcy court did not abuse its discretion in imposing sanctions under its inherent powers for PHH's flagrant misconduct in repeatedly violating Rule 3002.1 even after prior sanctions, warnings from bankruptcy courts, and a representation by PHH that it would rectify any internal controls that were contributing to such violations.

## D. The Amount of the Sanctions

Although the majority did not need to analyze the amount of the sanctions in light of its holdings, I briefly write to explain why there would have been no

basis to disturb the bankruptcy court's determination that $75,000 was the appropriate amount.

As a threshold matter, given that PHH is a multi-billion- dollar company, $75,000 was a modest, non-serious sanction that did not present the type of financial impact on PHH that would warrant heightened due process requirements. *See, e.g.*, *United States v. Twentieth Century Fox Film Corp.*, 882 F.2d 656, 665 (2d Cir. 1989) ("We conclude that the jury right is available for a criminal contempt whenever the fine imposed on an organization exceeds $100,000. For fines below the $100,000 threshold, it will remain appropriate to consider whether the fine has such a significant financial impact upon a particular organization as to indicate that the punishment is for a serious offense, requiring a jury trial."); *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 103–04 (2d Cir. 2016) (finding that a $90,000 sanction against an internet company was "relatively minor"); *cf. Mackler Prods., Inc. v. Cohen*, 146 F.3d 126, 130 (2d Cir. 1998) (concluding "the imposition of a $10,000 punitive sanction on an individual (*as opposed to a corporation or collective entity*) requires" certain heightened due process protections (emphasis added)); *see also Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 793 F.2d 1529,

1535 (11th Cir. 1986) (characterizing a $25,000 contempt sanction imposed against corporate restaurant chain as "a modest sanction").

With respect to the determination as to the amount of the sanction, the bankruptcy court properly considered the amount that would be necessary to provide deterrence in light of PHH's ability to pay and its sophistication. *See Oliveri v. Thompson*, 803 F.2d 1265, 1281 (2d Cir. 1986) ("[I]t lies well within the district court's discretion to temper the amount to be awarded against an offending [person or entity] by a balancing consideration of his [or its] ability to pay."); *see also Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1259 (10th Cir. 2015) ("[B]ecause the principal purpose of punitive sanctions is deterrence, the offender's ability to pay must be considered."); *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1338 (11th Cir. 1999) ("A bigger award is needed to attract the attention of a large corporation." (alteration and internal quotation marks omitted)). In particular, in its initial opinion, the bankruptcy court explained:

> [T]he Court must take into account that PHH is a sophisticated commercial lender and an entity of substantial financial means. According to the public statements on its website, PHH is a top-ten originator and servicer of residential mortgages in the United States, boasting approximately $41 billion in mortgage financing and maintained an average servicing portfolio of approximately 1.1 million loans in 2015 alone. PHH has the expertise and experience to be charged with knowledge of the Bankruptcy Rules, of its duty to

34

comply with court orders, and of its obligation to fulfill the commitments it makes to courts and debtors.

*Gravel I*, 556 B.R. at 578 (footnote and internal quotation marks omitted). The bankruptcy court also addressed that factor in its second opinion. *See, e.g.*, *Gravel II*, 601 B.R. at 901 ("PHH administers millions of dollars in mortgages every day, and therefore it is all too easy for it to pay a $10,000 sanction as a cost of doing business, and there is no way of selecting a specific amount that will *necessarily deter*." (internal quotation marks omitted)).

Similarly, it was well within the bankruptcy court's discretion to link the amount of the sanctions to the number of violations. *See Int'l Techs. Mktg.*, 991 F.3d at 369 (holding that the "number of misrepresentations that a party makes are perfectly acceptable data points for a court to consider in determining whether – and, perhaps more importantly, *what* – sanctions are warranted"). Here, the bankruptcy court determined that a sanction of $1,000 per violation should be imposed in light of PHH's repeated violations. Because PHH violated Rule 3002.1 on twenty-five separate occasions in each of the three cases, the bankruptcy court's formula resulted in a total of $75,000 in sanctions. That determination, especially in light of the prior sanction against PHH for the same misconduct and its sophistication, was not an abuse of discretion.

* * *

In sum, I conclude that the bankruptcy court did not exceed its authority or abuse its discretion in imposing $75,000 in sanctions against PHH under either Rule 3002.1 or its inherent powers for the reasons set forth above, and therefore, I respectfully dissent from the portion of the majority's opinion which vacated the imposition of those sanctions.